Warren v. The St. Louis Merchants Exchange.

---

JOHN A. WARREN *et al.*, Respondents, v. THE MERCHANTS EXCHANGE OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, December 27, 1892.

1. **Merchants Exchange:** NEGLIGENCE OF CLERK: SUFFICIENCY OF EVIDENCE. Auction sales were made at the call board of a merchants exchange among the members thereof, and it was the duty of a clerk to keep a record of them; but the accurate performance of this duty was extremely difficult, since bidding was very rapid and great confusion attended the transactions. *Held,* that the failure of the clerk to record a sale warranted a finding of negligence on his part.

2. ———: ———: EVIDENCE OF CONTRIBUTORY NEGLIGENCE OF MEMBER. The member making the sale did not examine the record, in order to assure himself of the entry of the transaction. *Held*, that this did not conclusively establish contributory negligence on his part, notwithstanding that it was the general practice of members to make such examination daily.

3. ———: ———: LIABILITY OF EXCHANGE. These auction sales were made at a call board, and only members who paid an extra charge for the privilege could participate in them. The clerk and an auctioneer were employed and paid by the exchange, which was a corporation. *Held*, that under the evidence the exchange only undertook to afford such of its members, as wished to avail themselves thereof, facilities for trading among themselves, and did not intend to conduct the auction so as to become responsible for the mistakes of its appointees in charge thereof, and, therefore, that it could not be held for the failure of the clerk to record a sale in the absence of proof of negligence in the appointment of him.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED.

*Judson & Taussig*, for appellant.

The court below erred in refusing appellant's declarations of law and in overruling its motion for a new trial and in arrest, and in its rendition of judgment against this appellant. The admitted facts of the case do not constitute actionable negligence as against defendant Whitmore. Even admitting the actionable negligence of Whitmore, the maxim of *respondeat superior* had no application, in that the merchants exchange upon no theory of law can be held to be the legal superior or principal of the call-board clerk, in recording the private business transactions of plaintiff and his fellow members. The corporate business of the exchange is the furnishing of facilities to its members for the transaction of their individual business.

*State ex rel. v. Merchants Exchange,* 9 Mo. App. 96; *Goddard v. Merchants Exchange,* 9 Mo. App. 290; s. c., 78 Mo. 690; *Eliot v. Merchants Exchange,* 14 Mo. App. 234; *Albers v. Merchants Exchange,* 39 Mo. App. 583; s. c., 45 Mo. App. 206.   In recording the sale of plaintiff's wheat, Whitmore was transacting the business not of the exchange, but of the plaintiffs and other parties concerned.   In transacting their business, he was their agent and not in any conceivable legal sense was the exchange his principal or legal superior in the transaction of such business.   Shearman & Redfield on Negligence, sec. 144; Cooley on Torts [2 Ed.] p. 624; Wood on Master & Servant [2 Ed.] sec. 304; 2 Kent's Commentaries [12 Ed.] sec. 260*n;* 2 Dillon on Municipal Corporation [4 Ed.] sec. 974; *Murtaugh v. City of St. Louis,* 44 Mo. 479; *Armstrong v. City of Brunswick,* 79 Mo. 319; *Heller v. Sedalia,* 53 Mo. 159; *McKerner v. City of St. Louis,* 6 Mo. App. 320; *McDonald v. Hospital,* 120 Mass. 432; *Benton v. Trustees,* 140 Mass. 13; *Donovan v. McAlpin,* 85 N. Y. 185; *Patrol v. Boyd,* 120 Penn. 624; *Walsh v. Trustees, etc.,* 96 N. Y. 427; *Lambkin v. Steamship Co.,* 107 N. Y. 228; *O'Brien v. Steamship Co.,* 28 N. E. Rep. 266; *Allen v. Steamship Co.,* 15 L. R. A. 166; *Secord v. Railroad,* 18 Fed. Rep. 221.

*C. M. Napton,* for respondents.

THOMPSON, J.—The plaintiffs, who are a partnership firm, bring this action jointly against the Merchants Exchange of St. Louis, which is a corporation, and Charles H. Whitmore, an employe of the corporation, to recover damages alleged to have been sustained by the plaintiffs in consequence of a mistake made by Whitmore, while acting as clerk of what is known as the call board of the said exchange.   The petition

alleges that the plaintiffs were members of the exchange and owners of chairs on the said call board, and that at an auction of wheat which took place at said call board they sold to another member of the exchange and of the call board, namely, D. R. Francis & Brother Commission Company, eight cars of wheat for cash; that it became the duty of the exchange, by its agent and servant, Charles H. Whitmore, to make a memorandum and record in writing of said sale; that said Whitmore negligently failed to make such a memorandum in writing; and that in consequence of his negligence the plaintiff could not, under the rules of the exchange, hold the purchasers to the contract of sale, but lost the benefit of such contract. The petition states other facts showing the extent of the damages of the plaintiffs, which are laid at the sum of $126. The answer admits the incorporation of the defendant, the merchants exchange, but denies all the other allegations of the petition. There was a trial in the circuit court before a judge sitting as a jury, and he made a finding and judgment in favor of the defendant Whitmore, but against the defendant corporation, and the corporation prosecutes this appeal. No declarations of law were made, and none were requested, except one by the defendant corporation to the effect that the plaintiff was not entitled to recover against it, which the court refused.

There was little or no conflict in the evidence, and we shall lay out of view two or three questions for the purpose of making clear the grounds on which we shall decide the case. The first of these questions is the contributory negligence of the plaintiffs in not examining the book kept by Whitmore as clerk of the call board for the purpose of ascertaining whether their sale had been correctly entered upon the book. There was evidence tending to show that it was the general

habit of the members of the exchange to make such examinations seasonably after the close of the auction which took place at the call board, and the evidence showed that the plaintiffs made no such examination in the case under consideration. Contributory negligence was not pleaded; and the rule in this state is that, in actions for damages grounded upon negligence, the contributory negligence of the plaintiff does not, unless pleaded, form a separate issue and is not to be considered unless an unavoidable inference of contributory negligence arises out of the evidence adduced by the plaintiff, either upon the direct or the cross-examination of his own witnesses. *Stone v. Hunt*, 94 Mo. 475. Waiving whatever advantage may accrue to the plaintiffs in respect of this question, growing out of the fact that contributory negligence was not pleaded, we are of opinion that it cannot be said as a matter of law that the plaintiffs were negligent in assuming that the clerk of the call board would put down their sale correctly upon his record.

Another question which we shall lay out of view is the question of the negligence of the clerk of the call board himself. The evidence explains in detail what this call board is. It is merely a meeting of certain members of the exchange, at a certain hour and at a certain place on the floor of the exchange, for the purpose of buying and selling as among themselves at auction, through the aid of an auctioneer and clerk of sales furnished by the exchange. An extra fee is paid by such of the members as acquire membership in this so-called call board, that is, by such of them as acquire the right to buy and sell with each other at this daily auction. The auctioneer and clerk are appointed by the directors of the exchange, and receive compensation from the funds of the exchange, and are under the

control of the directors of the exchange, and conduct their duties according to certain rules prescribed by the directors, and they are not appointed by or subject to the control of the members of the exchange, or of the call board, in any other sense than that above stated. The evidence shows that the bidding is very rapid at this board, that great confusion attends the sales, and that it is extremely difficult for the clerk to make and preserve an accurate record of them, facts which easily account for the action of the members in verifying the records as soon as entered in the book. It must be conceded, we take it, that even under such circumstances a mistake in inaccurately noting a sale is *some* evidence of negligence,—in other words, that it is what the law books denominate *prima facie* evidence of negligence, such as shifts the burden of proof and calls for an explanation by the party answerable for such negligence. It is plain that the circuit court, as a trier of the facts, might easily have found, in view of the explanation of the difficulties of preserving an accurate record of the sales which take place at this auction, that negligence on the part of the clerk had not been made out. But this would be a conclusion of fact, and not a conclusion of law; and the circuit judge has determined the fact the other way, finding that there was such negligence on the part of the clerk, and his conclusion as trier of the fact is, on well-settled grounds, conclusive upon us.

This leaves it for us to consider whether the corporation known as the Merchants Exchange of St. Louis is answerable for the damages sustained by the plaintiffs in consequence of the negligence of the clerk of the call board, under the rule of *respondeat superior.* We are of opinion that this question must turn upon the view which is taken of the duty which the corporation assumes, and which it is undertood to assume,

toward its members in respect of the conduct of its call board. The position of counsel for the plaintiffs, as we understand it, is that the members of the exchange who belong to the call board hire and employ the exchange to conduct this auction for them; that the exchange assumes, for a reward paid by such members, the duty of conducting this auction; that it selects its own agents for the discharge of that duty, and makes its own rules for their government in discharging it; and that it is, hence, answerable for their negligence in discharging it, under the rule of *respondeat superior*. On this line of thought a plausible argument has been made by counsel for the plaintiff, and it is plain that the conclusion of the circuit court could be vindicated upon theoretical lines, which would be in accordance with many of the analogies upon which courts have proceeded in dealing with questions of this kind. If the position of the exchange is, as argued by the plaintiff,—if, in other words, it assumes toward the members of its call board, for a special reward paid by each of them, the duty toward each of them distributively of conducting a daily auction for their benefit,— then it seems to be exactly in the position of a common carrier, a telegraph company, or any other corporation or person that undertakes for a reward the performance of a duty and proceeds to perform that duty by its own methods and through its own servants; in such cases the rule of *respondeat superior* undoubtedly applies; the law identifies the master with the servant, and the master becomes answerable for the negligence of the servant.

If, on the other hand, the view pressed upon us in argument by counsel for the exchange be the correct view, that the exchange does not assume for a reward the duty of conducting an auction for the members of its call board, but merely assumes the duty of furnish-

ing certain facilities upon its floor to enable them to buy and sell with each other at auction,—among these facilities being an auctioneer and a clerk of sales appointed by the exchange through its directors, then it would seem to follow that, unless the exchange has been negligent in establishing these facilities, or more particularly in the present case in the selection of a competent person to act as such clerk of sales, then the rule of *respondeat superior* does not apply, and it is not answerable for the negligence of such clerk.

As in many other cases where it is sought to make a master liable for the negligence of his servant, or a principal liable for the negligence of his agent, the question of his liability must turn upon a consideration of the nature of the duty which he has undertaken, and which he is understood by the other party to the contract to have undertaken; because, in these as in all other cases, actionable negligence consists in the failure of some duty either assumed by contract or imposed upon the party in a given situation by operation of law. This view may be illustrated by a divergence of judicial opinion which has taken place in this country upon the question, whether a bank which receives a bill or note for collection upon a distant place, and which transmits it to a proper agent at such place for collection, exercising due care in the selection of such agent, is responsible to the owner of the bill or note, if such agent collects the money and fails to pay it over. This divergence of opinion is illustrated by the decision of our supreme court in *Daly v. Bank*, 56 Mo. 94, where, after reviewing several of the opposing decisions, the court held that in such a case the banker receiving the note, and transmitting it to the collecting agent at the distant point with proper instructions, is not liable for his misfeasance in not paying over the money. An examination of the opposing decisions

upon this question will show that the courts divide in their opinion upon the question what duty the bank receiving the paper for collection assumes and is understood to assume in behalf of the holder of the paper. Some of the courts, and notably the court of appeals of New York (*Ayrault v. Bank*, 47 N. Y. 570), and still later the supreme court of the United States (*Exchange Bank v. Bank*, 112 U. S. 282), hold that such bank assumes the duty by its own agents and its own methods of collecting the paper, and that it is responsible for the negligence or fraudulent failure of its agents to transmit the money collected, exactly as an ordinary bailee, undertaking the performance of duties by his own agents and his own methods, is responsible for their negligence and frauds. The courts, holding the opposing view, proceed upon the ground, that the bank receiving the paper assumes no other duty than the duty of care in selecting a proper collecting agent at the distant point, and of transmitting the paper safely to him with proper instructions. It is plain that there is plausible if not logical ground for the decision of this question either way, and that it is one of those questions which turn on the conception which the judges take of the duty which, in the absence of any express contract, the banker who undertakes to receive and transmit the paper for collection assumes and is understood to assume toward the owner of it.

Such, in our view, is the question before us; and we are clear that it must be made to turn upon the view which we take, upon the evidence presented in this record of the nature of the duty which the incorporated exchange has assumed toward such of its members as have purchased from it the right of buying and selling with each other at this auction, called the call board.

The exchange was incorporated by the legislature of Missouri in 1863. Prior to that date it had existed as an unincorporated voluntary association. The purposes of its organization, as stated in its articles of association, which existed prior to its incorporation, were to advance and promote the commercial and manufacturing interests of the city of St. Louis; to inculcate just and equitable principles of trade; to establish and maintain uniformity in the commercial usages of the city; to acquire, preserve and disseminate valuable business information; to avoid and adjust, as far as practicable, the controversies and misunderstandings which may arise between individuals engaged in trade, when they have no acknowledged rule to guide them. The corporation has no capital stock in the proper sense of that expression; but it issues certificates of membership for a fee paid therefor, which certificates are transferable, and which have been by this court held to be leviable under execution as property, subject to the rules of the exchange. *Eliot v. Merchants Exchange*, 14 Mo. App. 234. But while it has no capital stock, it has a large surplus, derived from various sources, from the sales of its certificates of membership, from the fees paid by members of its call board, from fines and forfeitures laid against its members, but chiefly it seems from the rent of rooms in its building. It is said to have had, at the time of the institution of this suit, a surplus of nearly $600,000 in cash. Among the offices which it performs is the furnishing of market reports to its members; the furnishing of a building for the transaction of the business of its members among themselves; the keeping of records of its transactions, and the appointment of a board of arbitration and appeals for the settlement of disputes among its members. Like other corporations it has a board of directors. It employs engineers,

janitors, boys to operate its elevators, and other servants, as well as the auctioneer and clerk of the call board in question. It provides for the use of its members reading rooms and exchange rooms, and establishes rules and regulations for their conduct in the same. It appoints inspectors, establishes grades of grain, etc., establishes rates of commission to be charged by its members, appoints a board of weighers and also a board of registration, and receives deposits put up by members to secure the fulfillment of their contracts with each other. In short, its office consists almost entirely in furnishing a building wherein its members may meet and trade with each other as merchants; in establishing rules for their conduct, when so trading; in furnishing certain facilities for their trading; in prescribing in some respects the forms of their contracts among themselves; and in settling by arbitration their disputes. It thus clearly appears that it is, in all substantial respects, analogous to that class of associations, many of them incorporated and many of them not, known as *mutual benefit societies*. In these societies it is an established principle of law, constantly acted upon by the courts of this state, that the rights of the members *inter sese*, and the rights of individual members against the aggregate society, rest *in contract*, and are to be determined by the reading and comparison of their constating instruments, so-called; of their articles of association, by-laws, rules and regulations, which they have seen fit to make for and among themselves, and to which each member has expressly or impliedly agreed to submit. *Borgraefe v. Knights of Honor*, 22 Mo. App. 142; *Hammerstein v. Parsons*, 38 Mo. App. 337, and authorities cited. This principle applies in cases where such a society is incorporated, as well as to cases where it is unincorporated, with this difference only: That, where it is incorporated, its charter or

the general statute under which it is organized enters into and forms a part of the contract subsisting among the members and between the individual members and the incorporated body, and is, of course, paramount to any other contractual relation which the members may assume among themselves, or as between themselves and the corporation by their private instruments of writing —their articles of association, by-laws, rules and regulations, etc.

In the present case, no statutory provisions to which the corporation known as the Merchants Exchange of St. Louis is subject, and no provisions of its articles of association, its by-laws, rules or regulations, have been cited to us, from which we are able to draw the inference that the exchange assumes the duty, towards such of its members as purchase the privilege of buying and selling on its call board, of conducting an auction for their benefit, in such a sense as makes the exchange answerable for the mistakes of those appointed by it to conduct the auction, assuming that it has been guilty of no negligence in appointing suitable persons to discharge this duty. On the other hand, we agree with counsel for the exchange that all that can be gathered from the instruments which have been put in evidence, relating to the purposes of the exchange and of this call board, is that the exchange undertakes through its directors and other managing officers to afford certain facilities upon its floor to such of its members as wish to avail themselves of such facilities for buying and selling at auction as among themselves. Among these facilities is the auctioneer who calls the offers and bids, and the clerk who records the sales. There is no evidence tending to show that the exchange has been guilty of any negligence in the appointment of these persons to conduct the sales, or in prescribing suitable rules and regulations for con-

ducting the sales. It is not claimed that Whitmore was not a person entirely suitable and proper to discharge the office of clerk or recorder of the sales. If the members of this incorporated body had intended that the aggregate body should assume such a responsibility towards its members as is sought to be enforced in this action, it would have been easy and natural for them to express that intention in a regulation to that effect. It is easy to see what serious consequences such a regulation might entail. It would make the incorporated body liable for any damages to its own members through any negligent mistakes that might arise in furnishing the facilities which it undertakes to furnish to them,—from a mistake in a telegraphic report of a foreign market, to a mistake of one of its pages in delivering a message. It is quite evident that, if it were held to rest under this liability, it might be necessary for it to increase its assessments against its members, in order to provide the means for meeting such an increased responsibility.

If the question is more nearly viewed in its moral aspects, it seems difficult to answer why the other members of such a body should be held liable to make good the losses of a particular member, sustained through a mistake committed by a servant appointed by the governing body, who is in substance the servant of all the members availing themselves of the facilities in respect of which such servant acts, including the party suffering the loss. In other words the clerk of the call board was in substance and fact the servant of the plaintiff as well as the servant of the corporation; for the plaintiff was himself a member and a part of the corporation.

If we are correct in the view that the duty assumed by the exchange was merely the duty of appointing suitable persons to conduct the auction known as the call board, and prescribing suitable rules for the gov-

ernment of such auction, then the conclusion that the corporation is not liable becomes very clear; for it cannot be held that, if one person at the request of another appoints an agent to perform some duty for that other, the person so appointing the agent makes himself liable to the principal of the agent for the misprisions of the agent. For instance, a merchant writes to a banker at a distant place to put a dishonored bill into the hands of a suitable attorney for collection. The attorney is guilty of malpractice in the conduct of the suit, whereby the bill is not collected; or he collects it and fails to pay over the money. It would be extraordinary if a lawyer should advance the proposition that the banker selecting the attorney has made himself liable for his negligence or fraud, unless he was negligent in not selecting a reputable and apparently suitable attorney. It would be equally extraordinary if the proposition were advanced, that a person, who calls in a physician or a surgeon to attend upon one who is sick or wounded, makes himself liable to the patient for the malpractice of the physician or surgeon, in the absence of negligence or fraud on his part in not selecting a physician or surgeon of good repute and apparently competent.

Several decisions which have been cited to us by analogy support this conclusion. In *McDonald v. Hospital*, 120 Mass. 432 (s. c., 21 Am. Rep. 529), it was held that an incorporated hospital, having no capital stock nor provision for making dividends or profits, but deriving its funds chiefly from public and private charity, and holding them in trust for the purpose of sustaining a hospital, which has exercised due care in the selection of its surgeon and assistants, is not liable for an injury to a patient though the negligence of its surgeon or the incompetency of a medical student, called a "house-pupil," in not properly setting a broken

bone, In *Secord v. Railroad*, 18 Fed. Rep. 221, it was held that a railroad company, which provides surgical assistance to an injured passenger, is not, in the absence of negligence in selecting the surgeon, liable to the passenger for damage sustained through his malpractice. In *Laubheim v. Steamship Co.*, 107 N. Y. 228, it was held that a steamship company, which exercises reasonable care in selecting a surgeon to attend to its passengers on its voyage, is not liable in damages to a passenger for an injury received through the malpractice of such a surgeon. In *O'Brien v. Steamship Co.*, 28 N. E. Rep. 266, the supreme judicial court of Massachusetts made a similar ruling. To the same effect is *Allen v. Steamship Co.*, 132 N. Y. 91; s. c., 15 L. R. A. 166. In *Murtaugh v. St. Louis*, 44 Mo. 479, it was held that the city of St. Louis was not liable in damages to a non-paying patient at the hospital of the city for injuries resulting from the negligence and misconduct of the hospital officials and servants.

In these cases the plaintiff, seeking to charge the corporation with liability on the principle of *respondeat superior*, was not a member of it, as in the case before us. A principle, which would make the exchange liable in such a case as that before us, would, by extension upon strictly logical lines, lead to some startling results. For instance, many of the benefit orders, incorporated and unincorporated, employ physicians at a salary to attend upon their members during sickness. A principle, that would charge the merchants exchange in favor of a member of its call board with damages for the mistake of the clerk of the call board, would charge one of these mutual benefit societies in favor of one of its members for damages for the malpractice of one of its physicians, although it may have been guilty of no negligence in the selection

of the physician. Social clubs occupy a position in law analogous to merchants exchanges. A principle, that would charge the merchants exchange under the facts of this case, would charge an incorporated club, in favor of one of its members, with damages, in case the member should be made sick or poisoned by a mistake of its caterer in making a can of ice-cream, or in other ways that might be supposed.

On the whole, while the question is by no means free from difficulty, we feel constrained to take a different view of it from that taken by the circuit court, and we accordingly reverse the judgment with the concurrence of all the judges.