## CATHERINE ECKHARD v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division Two, October 25, 1905.

1. **NEGLIGENCE: Right to Recover.** Where negligence is shown on the part of a street railway in the operation of its cars, and injury results therefrom to a pedestrian, the plaintiff is entitled to recover damages unless the injured party was guilty of contributory negligence.

2. ————: **Contributory Negligence: Burden.** The burden is upon the defendant to establish such contributory negligence as will defeat recovery.

3. ————: ————: **When Matter for Jury.** When the facts bearing on the issue of contributory negligence are disputed, or when they are undisputed but admit of different constructions and inferences, the issue must be left to the jury.

4. ————: **Presumption of Ordinary Care: Looking and Listening.** The law indulges the presumption that a pedestrian in approaching a street-car crossing was in the exercise of ordinary care and prudence.

5. ————: ————: ————: **Demurrer to Plaintiff's Case.** The petition charged that the car was running in excess of ten miles an hour and that the motorman failed to keep a vigilant watch for persons on the track; and plaintiff offered evidence tending to show that the car was running twenty or thirty miles an hour on a down grade, and two ordinances, one fixing the maximum speed of street cars at ten miles an hour, and the other making it the duty of motormen to keep a vigilant watch for pedestrians on the track or approaching near it and in case of danger to stop the car in the shortest time and space possible; and, also, evidence showing that the deceased stopped at the west

side of the crossing until a north-bound car passed, and when it had done so he tried to cross, but was struck by the south-bound car just as he was leaving the track, and killed. *Held*, that these facts tend to prove that the car was being carelessly and negligently operated in violation of an express ordinance, and, when taken in connection with the presumption which the law indulges that deceased was exercising ordinary care and prudence in approaching the car, justified the court in refusing defendant's demurrer to the evidence at the close of plaintiff's case; and, that said demurrer could not be sustained on the ground that there was no evidence showing that plaintiff did not look and listen for the approaching car.

6. ——: ——: **Demurrer at Close of Whole Case.** A case having been made out by plaintiff entitling her to go to the jury at the close of her evidence, the court should not sustain a demurrer to the evidence at the close of the whole case on the ground that deceased did not look and listen for the car as he approached the track or was not otherwise in the exercise of ordinary care, unless all the facts developed at the trial, upon a fair and reasonable consideration of them, point irresistibly to the one conclusion that he was guilty of contributory negligence in approaching the track.

7. ——: **Speed of Car: Presumption: Contributory Negligence.** A pedestrian about to cross a street railway track has the right to presume that an approaching car is not being run in excess of the maximum rate permitted by the city ordinance. And if there was sufficient time for him to have crossed the track in safety had the car been run at the prescribed rate, he was not guilty of contributory negligence if he acted upon that presumption and was injured before he got across.

8. ——: **Presumption that Pedestrian Will Stop.** If the conduct and actions of a party approaching a street railway track would lead a mortorman of ordinary prudence to conclude that such party is going upon the track in front of the car, the right of the motorman to act upon the presumption that the person will stop before going on the track, ceases.

9. **INSTRUCTION: Emphasizing Parts of Testimony.** Instructions which undertake to make prominent certain parts of the testimony and directing the jury to specially consider them in reaching their conclusions in relation to the ultimate facts to be found, are not favored.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

AFFIRMED.

*Geo. W. Easley* with *Boyle, Priest & Lehmann* for appellant.

The court below erred in not giving the instruction asked by defendant at the close of the plaintiff's evidence in chief, directing a verdict for the defendant. It sufficiently appeared from the evidence offered on behalf of plaintiff that the only negligence shown against the defendant was excessive speed and the failure to ring the bell. It was and is an indisputable fact that if the plaintiff's husband had either looked or listened, he could have seen and heard the approaching car in time to have avoided the injury. So that there was a clear case of contributory negligence shown on the part of the plaintiff's husband, without which the accident could not have happened. Where such is the case, and the facts are undisputed as to the conduct of the respective parties, the negligence of the defendant as to the excessive speed and failure to sound the bell may be conceded, and the conduct of the plaintiff's husband must bar any recovery. The law seems now well established in this State that where one, by the exercise of care, can avoid the negligence of another, failure to exercise care prevents a recovery. Ries v. Railroad, 179 Mo. 7; Moore v. Railroad, 176 Mo. 528; Zumault v. Railroad, 175 Mo. 288; Warner v. Railroad, 178 Mo. 133.

*Rassieur & Buder* and *John W. Benstein* for respondent.

(1) The court properly refused the instruction asked by defendant at the close of plaintiff's case. In the absence of direct evidence to the contrary, or rebutting circumstances, the law presumes that the deceased exercised ordinary care at the time of the accident. The question of contributory negligence is one for the jury. Petty v. Railroad, 88 Mo. 320; Crumpley v. Railroad,

111 Mo. 158; Jennings v. Railroad, 112 Mo. 268; Schler-
eth v. Railroad, 115 Mo. 87; Hutchinson v. Railroad,
161 Mo. 246; Weller v. Railroad, 164 Mo. 198; Riska v.
Railroad, 180 Mo. 168; Reed v. Railroad, 80 S. W. 919.
(2) "In an action against a street railway for negligent
death at a crossing, where the evidence conclusively
showed defendant's negligence in running its car at an
unlawful rate of speed, the plaintiff was entitled to re-
cover, unless it was shown by a preponderance of the
evidence that deceased was guilty of contributory neg-
ligence in failing to look and listen for the car before
entering on defendant's tracks." Petty v. Railroad,
88 Mo. 320; Crumpley v. Railroad, 111 Mo. 158; Schler-
eth v. Railroad, 115 Mo. 87; Hutchinson v. Railroad,
161 Mo. 246; Weller v. Railroad, 164 Mo. 180; Riska v.
Railroad, 180 Mo. 168; Reed v. Railroad, 80 S. W. 919.

FOX, J.—This is an action by plaintiff, the widow
of George F. Eckhard, deceased, to recover from de-
fendant five thousand dollars damages for the negligent
killing of her husband, the said George F. Eckhard, at
the intersection of South Broadway and Fillmore
streets in the city of St. Louis, on the afternoon of De-
cember 15, 1901.

The petition alleges the incorporation of defend-
ant; its operation of a line of street railway along South
Broadway; that South Broadway and Fillmore streets
were open public streets in the city of St. Louis; that
George F. Eckhard was the lawful husband of plaintiff;
that on the 15th day of December, 1901, and within six
months of the filing of the petition, George F. Eckhard,
the husband of plaintiff, was crossing South Broadway
at the intersection of Fillmore street, when defendant's
servants in charge of its south-bound car, negligently
and carelessly and without using any care to control
the movements and speed of said car or slow up or stop
said car, caused and suffered said car to run upon said

crossing and said street at a violent, excessive and negligent speed, knocking down, running upon and dragging the said George F. Eckhard and causing the death of said George F. Eckhard; that an ordinance then in force required defendant's motorman and conductors to keep a vigilant watch for persons on foot, either upon defendant's tracks or moving towards them, and upon the first appearance of danger to stop the car within the shortest time and space possible; that at the time of the killing of said Eckhard these duties on the part of defendant's servants were neglected; that there was also in force at the time of the accident an ordinance which provided that a car should not. be run at a greater speed than ten miles per hour, at the place of the accident, and that the car was run at a greater rate of speed than specified in said ordinance, to-wit, twenty miles per hour, and that the violation of said ordinance directly contributed to cause the death of said Eckhard.

The answer was a general denial and also contained a plea of contributory negligence, to-wit: "That the death of plaintiff's husband was occasioned by his own carelessness and negligence in passing upon defendant's track in close proximity to defendant's moving car, without looking or listening for the approach of said car." To this plea there was interposed a general denial.

The testimony on the part of plaintiff tends to show the following state of facts:

That plaintiff is the widow of George F. Eckhard, deceased. On Sunday, December 15, 1901, deceased, who was a night watchman at the Missouri furnace, left his home at the corner of Michigan avenue and Bates street at about 5:30 o'clock in the afternoon; that he was on his way to the place of his employment and after reaching Broadway proceeded south on the west side until he reached Fillmore street; that while he was crossing Fillmore street on the north crossing he was

killed by being struck by the east front end of defendant's south-bound car just as he was stepping off of the track; that Broadway is a north-and-south street, and Fillmore is an east-and-west street, running to the river, and crossing Broadway at about 6000 south; that the St. Louis Transit Company operates its lines along Broadway at that point and has a double track, the track for the north-bound cars being on the east side, and the track for south-bound cars being on the west side of Broadway; that there is only one crossing from the west to the east side of Broadway at that point, and that the crossing is on the north side of Fillmore street; that the east-and-west streets north of Fillmore street, in their respective order, beginning with the one nearest Fillmore street, are Ellwood street, Dover street, Caldwell street, Bates street and Fassen street; that there is a grade immediately north of Fillmore street and that from Fassen street to Fillmore street there is a fall of about sixty-seven feet, and that in the first block north of Fillmore street there is a fall of eleven feet, and in the second block there is a fall of fourteen feet; that the fall for the two blocks immediately north of Fillmore street is twenty-five feet; that from Fillmore street and Broadway a person could see north about a block and a half or two blocks and that Broadway is straight from that distance and the bend occurs after you pass that distance north of Fillmore street. The speed of the car was estimated by the various witnesses at from ten to twenty-five miles per hour.

The evidence for plaintiff tended to show that deceased stopped on the west side of the north crossing of Fillmore street; that there was a north-bound car on the east track and that after the north-bound car had passed the Fillmore street crossing deceased was still seen at the corner on the west side of the crossing; that the bell of the north-bound car was ringing and that the

car had pased over the north crossing before deceased undertook to cross, and that the bell, on the south-bound car which struck the deceased, was not ringing as it approached that crossing.

The facts as developed on the part of the defendant were substantially as follows:

Reuben Staten, a witness for the defendant, testified that he was standing on the corner of Broadway and Fillmore street on the evening of this accident. He says that he was standing between thirty and thirty-five feet south—on the south side of the corner—from the corner, between thirty and thirty-five feet, and while he was there he saw a man undertake to go across the street and a car ran over him; at the time he saw him he did not know who the man was, but ascertained who he was directly afterwards. This witness says in answer to a question, that the car was run on the plaintiff's husband when he stepped in the track; that he came from the west side of the street; that a mail car was coming north and there was a passenger car going south, and it looked to him as if Eckhard thought he could cross. The witness then states that Eckhard stepped out in the track and the car ran over him. The witness does not undertake to fix the length of time after the deceased stepped onto the track before the car struck him; in answer to a question, he says it was done "just in a jiffy—just stepped out in the track." He says the car was lighted and that he, the witness, was standing on the south side of Fillmore, between thirty and thirty-five feet south of the curbstone, and on the west side of the car track. It is also stated by this witness that just before plaintiff's husband went onto the track he was looking right straight in front of him; didn't turn his head; "he looked neither north or south; he looked to me as though he was looking at the mail car." The mail car was in the direction in which he was looking. This witness further states in answer to

questions, that before deceased stepped into the track the mail car had passed north; that statement is then qualified, by his saying that the two cars came almost exactly on the crossing together, then the further statement is made in answer to a question, that when the mail car passed north Mr. Eckhard proceeded to cross the track and the car struck him instantly. On cross-examination of this witness he is unable to fix the distance that the mail car was beyond the crossing before Eckhard undertook to cross the track; he says he was looking at the man when the car struck him, "it was done so quick a man couldn't just tell how far it was, but it seemed as though he aimed to get by before the other car came." This witness also fails to fix the distance from the crossing that the south-bound car, which struck Eckhard was, when Eckhard undertook to cross the track, but simply says, "it was but a little ways from the crossing." The body of the deceased was found on the east side of the south-bound track.

The testimony of Edward Martin, the motorman, as to how this accident occurred, was as follows:

"Q. Now, tell the jury in your own way just how this accident occurred, at or near Broadway and Fillmore street, on the night of December 15th, last? A. Well, on the night of December 15th, Sunday evening, when I went south about 5:45 and got close to Fillmore street, I saw a man leave the sidewalk and start towards the track.

"Q. What did you do? A. I commenced stopping the car and sounding my gong.

"Q. Did you ring the bell? A. Yes, sir; ringing the bell when I was coming up the street.

"Q. Well, what did this man do? A. He just kept walking right towards the car track. When I got up within—the car got within about thirty feet of him, I couldn't see that he saw the car, and I commenced to 'holler.' Then I reversed the car when I got about fif-

teen feet of him, and he never made any signs that I saw that he saw the car until the car got within about four feet of him, and he threwed his arms up and the car struck him.

"Q. What do you mean by reversing the car? A. Well, pulling your reverse lever back.

"Q. Is that a more powerful agency than the brake? A. Yes, sir.

"Q. Is that the most powerful agency you have at your command as motorman to stop the car? A. Well, to make a sudden stop it is.

"Q. You applied your reverse power, did you? A. Yes, sir.

"Q. Did the car slide or stop? A. Well, the track was bad—snowy and icy on the track, and the car slid for a ways.

"Q. You reversed the car before you struck him? A. Yes, sir.

"Q. You rang the bell, did you, when you saw him approaching the track? A. I was ringing the bell before I saw him approaching the track.

"Q. Did you ring it after you saw him walking towards the track? A. Yes, sir.

"Q. Did he look in the direction of your car before he went upon the track? A. No, sir; he never looked towards my car that I could see.

"Q. Was it possible for you to stop your car after you saw he was going upon the track? A. No, sir; it wasn't.

"Q. Before you struck him? A. No, sir; it wasn't.

"Q. Was it a down grade there? A. Yes, sir.

"Q. How fast were you running at the time of the accident and just prior to it? A. Well, to the best of my knowledge it would be ten miles an hour.

"Q. And you were, about the time you came to Fillmore street, going south? A. Yes, sir.

"Q. Where was Eckhard with reference to the crossing when the car struck him? A. He was on the south side.

"Q. What position with reference to the two rails of the south-bound track; what position was he in with reference to the two rails? A. Well, he was walking right straight across them; as near straight across as I could see.

"Q. Was your car lighted? A. Yes, sir."

Upon cross-examination this witness was unable to state within what number of feet this car could have been stopped running at ten miles an hour in the condition of the track on that night, except to say that he guessed it could have been stopped within about fifty feet.

On further cross-examination he testified as follows:

"Q. It was the east front end of your car that struck him, wasn't it? A. Yes, sir; it was the left east front.

"Q. You testified which of the corners it was; it was the left front end of your car? A. Yes, sir.

"Q. It was the east front end as you were going south? A. Yes, sir.

"Q. And he was on the easternmost rail of the south-bound track as you struck him? A. Yes, sir; one more step and he would have been across.

"Q. Now tell us, if you please, what your testimony was before the coroner's jury, so far as the number of feet ahead of your car Eckhard was at the time you first saw him?

"Q. You testified that you were going south at Broadway and Fillmore street and saw a man thirty feet ahead and rang and shouted, is that correct? A. Yes, sir.

"Q. You didn't see him fifty feet ahead, you saw him about thirty feet ahead? A. I wouldn't say now;

whatever I remembered then—whatever I said then was right.

"Q. That was nearer right than it is to-day? A. No, sir; anything I say to-day is right, so far as I know.

"Q. Did you see him at any time before he got on the track? A. Yes, sir.

"Q. Did you see him coming towards the track? A. Yes, sir.

"Q. How far away from him were you at the time you saw him coming towards the track? A. That I couldn't say to-day, just how far away from him I was, but not very far.

"Q. You were thirty feet away from him after you saw him on the track? A. No, sir; I wasn't.

"Q. You said before, the car was going south on Broadway and Fillmore and you saw a man thirty feet ahead and rang and shouted. Was that after he was on the track?

"Objected to unless the question is put to the witness as it was at the coroner's office.

"Q. (Reading from testimony taken at the coroner's office): 'Tell the jury what you know about the death of Mr. Eckhard,' and your answer was, 'when I went south on Broadway and Fillmore street I saw a man crosing the street about thirty feet in front of me and sounded my gong and shouted, but could not make him hear me and struck him.' Is that correct? A. When I first saw him he was walking towards the track, but I was not thirty feet away from him when he got on the track, I want you to understand that, I wasn't thirty feet away from him.

"Q. Well, how far was Eckhard from the curb when you first saw him? A. From where?

"Q. From the curb at the sidewalk? Well, I couldn't say that exactly, how far he was; he was between the sidewalk and the track.

"Q. And you are positive he was on the south crossing, are you? A. Yes, sir; I am.

"Q. Now, don't you know, as a matter of fact, that there is no crossing on Broadway from the west side to the east side on the south side of Fillmore street? A. I know that Fillmore does not cross Broadway, but it comes up to Broadway.

"Q. What is that? Do you say Fillmore doesn't run beyond Broadway? A. No, sir; it doesn't.

"Q. It runs up to Broadway? A. Well, now look here—

"Q. Let us get the fact? A. Yes, sir; that is what I am trying to tell you. Now, I am not much acquainted with it, only know when I got there with the car, riding on a car; when I got to Fillmore street, I struck the man with the car at the south crossing of it, that is what I know about Fillmore.

"Q. Does Fillmore run through to the river at that point or not? A. I can't say now, it has been quite awhile ago.

"Q. Isn't it a fact, that there is no crossing on the south side of Fillmore street from Broadway on the west side to the east side? A. Now, a year ago it was, that happened, and I could have told you; I wouldn't say it now; it is quite awhile, and I ain't been down on Broadway since, and I don't remember.

"Q. You are positive, however, that the man was —that you first saw him when you were some thirty feet of him, are you? A. No, sir; I wouldn't say thirty feet, but something like that."

Martin Dougherty, a witness for the plaintiff, testified that Mr. Martin, the motorman, told him that Mr. Eckhard was not very far from him when he first saw him; about ten or twelve feet; he was stepping right on the track and as soon as he saw him he tried to reverse his car and the car struck him.

Mrs. Price and her daughter, who were introduced

by defendant, corroborated the motorman as to the ringing of the bell from the time he left Ellwood street on down the hill until the accident happened.

Defendant then offered in evidence certain parts of the testimony of Koehler, Lally and Berry, taken at the coroner's inquest, for the purpose of contradicting those witnesses who testified for the plaintiff upon the trial of this cause.

Defendant, at the close of the testimony on the part of the plaintiff, requested an instruction in the nature of a demurrer to the evidence, directing the jury to find the issues for the defendant, which was by the court overruled. This request was again renewed at the close of all the testimony in the cause and was again by the court denied.

The instructions given by the court were as follows:

"1. If the jury find and believe from the evidence, that Fillmore street and Broadway were, on December 15, 1901, open public streets within the city of St. Louis, and if the jury further find and believe from the evidence that at said time the defendant operated an electric railway along and upon Broadway, was using the tracks and owned and operated the railway car mentioned in the evidence, for the purpose of transporting persons for hire from one point to another in said city, and that on said day George F. Eckhard was the husband of plaintiff, that plaintiff's said husband was at said date crossing from the west to the east side of Broadway at its intersection with Fillmore street, and that while he was so crossing, defendant's south-bound car ran upon said crossing and street at a violent, excessive and negligent speed, knocking down, running upon and dragging the said George F. Eckhard and injuring him to such an extent as to cause his death; and if the jury further find and believe from the evidence, that defendant's agents, servants and employees in charge of

and operating said car either saw, or by keeping a vigilant watch for persons moving toward the track upon which said car was being propelled, could have seen said Eckhard moving toward and across said track, and in danger of injury, and that after seeing said Eckhard moving towards and upon said track, or, after they could have seen, by keeping a vigilant watch as aforementioned, defendant's agents, servants and employees, or either of them, could, by stopping said car within the shortest time and space possible under the circumstances, have averted said injury, and neglected so to do; and if the jury further find and believe, from the evidence, that said George F. Eckhard exercised ordinary care and prudence in walking towards and across said track, then your verdict should be for the plaintiff.

"2.   The court instructs the jury that if you find and believe, from the evidence, that Fillmore street and Broadway were, on December 15, 1901, open public streets in the city of St. Louis and that at said time the defendant owned and operated an electric railway running north and south along Broadway, for the purpose of transporting persons for hire from one point to another in said city, and was using the tracks and owned and operated the railway car mentioned in the evidence, and that on said day George F. Eckhard was the husband of plaintiff; and if you further find, from the evidence, that plaintiff's husband was at said date crossing Broadway at the intersection of Fillmore street, and that while he was so crosing, he was knocked down, run upon and dragged by the car mentioned in the evidence, and injured to such an extent as to cause his death; and if you further find and believe, from the evidence, that said George F. Eckhard exercised ordinary care and prudence in stopping, looking and listening for the approach of said car, before walking on and crossing said track, and that defendant's agents, servants and employees in charge of and operating said

car, either saw, or by the exercise of ordinary care on their part, could have seen said Eckhard moving towards and across said tracks, and that after seeing said Eckhard, or after by the exercise of ordinary care they might have seen said Eckhard, they could have stopped said car in time to have avoided said injury, and neglected so to do, then your verdict should be for plaintiff.

"3. The court instructs the jury that by ordinary care is meant such care as an ordinarily prudent man would use under like circumstances. And the court further instructs you that the law presumes that Eckhard was using ordinary care at the time of the accident, and the burden of proving the want of such care rests upon defendant.

"4. If the jury find, from the evidence, the plaintiff is entitled to recover, you will assess her damages in the sum of five thousand dollars.".

To the giving of each of which instructions defendant at the time excepted.

*Defendant's Instructions Given*:

"1. If you find from the evidence that the deceased was walking along and upon Broadway street for the purpose of crossing defendant's track in said street, then it was the duty of the deceased while approaching defendant's street-car track, to look in the direction from which the car was approaching, and also to listen for the purpose of ascertaining whether a car was approaching or not, and if he found from such means that a car was approaching so near as that there was danger of a collision, then it was deceased's duty to stop before going upon the track, and to let the car pass without interference or delay. If the jury find from the evidence that the deceased failed to look or listen, or that if he did look and listen that he failed to heed what he saw or heard, and that the situation was

such that by looking or listening he might have seen or heard the approach of the car in time to have avoided the accident, and that he failed to do so, and that such failure directly contributed to causing deceased's injury and death, then the plaintiff cannot recover, and your verdict must be for the defendant.

"2.    While the burden of proof is upon the defendant to establish its plea of contributory negligence upon the part of the deceased, yet this does not relieve the plaintiff from establishing by a preponderance or the greater weight of the evidence that the sole cause of deceased's injury was the negligence of the defendant's agent, as defined in the other instructions, and notwithstanding defendant's plea of contributory negligence, that the burden of proof rests upon the plaintiff throughout the trial of the case, and if the jury find from the evidence that the death of the deceased was caused by an accident for which neither party is responsible, or from the combined and concurring negligence of the deceased and the motorman in the manner set out in the instructions, then the plaintiff is not entitled to recover and your verdict must be for the defendant.

"3.    The jury are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony, and in determining the weight and credibility to be given to the testimony of any witness, the jury may take into consideration his interest in the proceedings, his attitude towards either the plaintiff or the defendant, and his bias or prejudice, if any. All of which are to be ascertained from the conduct of the witness upon the stand, the testimony by such witness taken into consideration with all the other testimony in the case and the physical fact shown to exist. And if the jury believe that any witness has willfully sworn falsely to any material fact, they may disregard all or any part of such witness's testimony.

"4. Even if the jury do find from the evidence that the motorman in charge of said car saw the plaintiff's husband approaching the track in front of the car, the motorman had the right to assume and act upon the presumption that the plaintiff's husband would stop before going upon the track, and was under no duty to attempt to stop the car until he became aware that the plaintiff's husband was going to get on the track in front of the car, or until his conduct and actions would have led a person of ordinary prudence to conclude that he was going to do so."

The following instruction was requested by the defendant, which was by the court refused:

"In determining whether or not the defendant's motorman in charge of the car could have stopped the car after seeing the deceased in the act of going upon the track, the jury will take into consideration the means at his command, the condition of the weather, and the condition of the track, and if the jury believe from the evidence that when defendant's motorman saw the deceased about to go upon the track, the motorman rang his bell, reversed his motive power, and that notwithstanding these facts he was unable to stop the car owing to the condition of the track, then the defendant is not liable and the plaintiff cannot recover."

This cause was submitted to the jury upon the evidence and instructions of the court and they returned a verdict for the plaintiff in the sum of $5000. Judgment was accordingly entered, and from this judgment defendant in due time and form prosecuted this appeal, and the record is now before us for consideration.

### OPINION.

The first and most vital proposition with which we are confronted in this cause is the contention of defendant, so earnestly and ably presented by counsel, that the demurrer to the evidence, interposed either at the close of plaintiff's case or at the close of the entire case,

should have been sustained and the jury directed to return a verdict for the defendant. This contention is based upon the decided views expressed by counsel, that deceased failed to look or listen in approaching the crossing of the street railway; hence, was guilty of contributory negligence and is not entitled to recover, and it was the duty of the court, upon the facts disclosed upon the trial, to so declare. In actions of this character, where negligence is shown on the part of the railway company in the operation of its cars and injury results therefrom, the plaintiff in such actions is entitled to recover unless it is shown by satisfactory evidence that the party injured was guilty of contributory negligence. In other words, where the injury is reasonably and satisfactorily accounted for, by reason of negligence on the part of the defendant, then the burden rests upon the defendant to establish such contributory negligence as would defeat a recovery. It is apparent that the position of learned counsel for appellant, upon this proposition, must find its support upon the theory that the facts developed at the trial established contributory negligence on the part of deceased. This leads us to inquire when and under what state of facts the court is warranted in declaring, as a matter of law, that the party injured was guilty of contributory negligence.

The rules of law applicable to this inquiry are well settled in this State. The issue of contributory negligence on the part of the plaintiff's deceased husband is sharply presented in the answer of defendant, and the replication of plaintiff. It is averred in the answer, "that the death of plaintiff's husband was occasioned by his own carelessness and negligence in passing upon defendant's track in close proximity to defendant's moving car, without looking or listening for the approach of said car," and this plea is denied by the plaintiff. If the facts bearing upon this issue developed at the trial are undisputed and reasonable men

·cannot differ in their inference from such facts, then
'it was clearly the duty of the court to decide that issue
as a matter of law. But on the other hand, as was said
in Berry v. Railroad, 124 Mo. l. c. 244, "when the facts
bearing on the issue are disputed, or when they are un-·
disputed, but admit of different constructions and in-
ferences, it must be left to the jury." [Marshall v.
Schricker, 63 Mo. 308; Mauerman v. Siemerts, 71 Mo.
101; Charles v. Patch, 87 Mo. 450; Tabler v. Railroad,
93 Mo. 79; Fletcher v. Railroad, 64 Mo. 484; Huhn v
Railroad, 92 Mo. 440; Railroad v. Ives, 144 U. S. 408;
Roddy v. Railroad, 104 Mo. 234; Bell v. Railroad, 72
Mo. 50; Nagel v. Railroad, 75 Mo. 653; Petty v. Rail-
road, 88 Mo. 306; Ostertag v. Railroad, 64 Mo. 421.]

If the facts as to the contributory negligence com-
plained of in this cause are undisputed and are not sus-
ceptible of different constructions and inferences, then
clearly it was the duty of the court to direct a verdict
for the defendant. But, on the other hand, as was ruled
in Buesching v. St. Louis Gaslight Co., 73 Mo. 219, when
the facts are disputed, or the credibility of witnesses
is drawn in question, or a material fact is left in doubt,
or there are inferences to be drawn from facts proved,
the case, under proper instructions, should be submit-
ted to the jury. [Kelly v. Railroad, 70 Mo. 609.]

This leads us to the consideration of the facts de-
veloped at the trial upon which this cause was submit-
ted to the jury. Upon the trial the ordinances alleged
in the petition were introduced in evidence, one requir-
ing defendant's motorman and conductors to keep a
vigilant watch for persons on foot, either upon defend-
ant's tracks or moving towards them, and upon the first
appearance of danger, to stop the car within the short-
est time and space possible; the other, providing that
the cars operated upon the railway should not be run
at a greater speed than ten miles per hour at the place
of the accident. As indicated in the statement of facts

of this case, plaintiff's deceased husband, George F. Eckhard, was a night watchman at some business place, and at the time of this accident, about 5:40 in the afternoon, he was proceeding to his work. He went south on Broadway until he reached Fillmore street. The darkness of night was fast approaching, in fact at the time of the accident it was just about dark. Broadway, it seems from the testimony, is a north-and-south street, and Fillmore is an east-and-west street, crossing Broadway at the point of the accident. On Broadway the defendant operated its line of cars over a double track; the track for the north-bound cars being on the east side, and the track for the south-bound cars being on the west side of Broadway. The testimony at least indicated that the deceased, after reaching Fillmore street, stopped on the west side of the north crossing of Fillmore street. It further appears in evidence that there was a north-bound car being propelled on the east track, and after the north-bound car had passed the Fillmore street crossing deceased started across to the east side, and just about the time he reached the east rail of the west track he was struck by the east front end of the south-bound car and killed. Two or three witnesses introduced by the plaintiff, with sufficient knowledge and experience as to authorize them to testify as to the speed of this car, stated that the car was running from twenty to twenty-five miles an hour. It is undisputed that at that point it was a down grade; that the fall for the two blocks immediately north of Fillmore street, the direction from which this car was coming, is twenty-five feet. There was other testimony showing the distance the car ran after striking plaintiff's deceased husband, which strikingly emphasizes the fact that the car was being operated at a very rapid speed. Upon this showing, at the close of the plaintiff's case, we have confronting us a state of facts which at least strongly tends to prove the careless and neg-

ligent operation of the car at the place of the accident
in violation of the express provisions of the ordinances
introduced in evidence. At the point where these negli-
gent acts were committed, plaintiff's husband was
killed by the car operated in the careless and negligent
manner, as indicated in the showing made by the plain-
tiff. This proof, in connection with the presumption
which the law indulges as to the care and prudence of
the deceased in approaching and crossing defendant's
railway tracks, in our opinion, entitled the plaintiff to
go to the jury.

If the repeated and well-considered adjudications
of this court, announcing the doctrine as to the pre-
sumptions indulged in favor of the injured party, are
to be longer followed, then there is no escape from the
conclusion that upon the facts developed at the close of
the plaintiff's case the presumption must be indulged
that deceased, in approaching and crossing defendant's
tracks, was in the exercise of proper care. In Weller
v. Railroad, 164 Mo. l. c. 198, it was said: "The pre-
sumption must be indulged that deceased did look and
listen before attempting to cross the track, that is, that
he was in the exercise of proper care. . . . Deceased
had the right to presume that the defendant would obey
the ordinances of the city regulating the speed of rail-
road trains, . . . . and when this presumption, to-
gether with the presumption that the deceased was at
the time of the accident in the exercise of due care, are
indulged, the plaintiff was entitled to recover unless it
conclusively appeared from the evidence adduced by
plaintiff, either by the direct or cross-examination of
her own witnesses, that her deceased husband was
guilty of negligence contributing directly to his own in-
jury. [Stone v. Hunt, 94 Mo. 475; Buesching v. St.
Louis Gaslight Co., 73 Mo. 219; Warren v. St. Louis
Merchants Exchange, 52 Mo. App. 157.] And in order
to overcome the presumption and to defeat plaintiff's

action, it devolved upon defendant to show, by the weight of the evidence, a failure on the part of deceased to exercise ordinary care to avoid the injury, and that his failure to exercise such care was its proximate cause, and so direct and immediate that, but for the want of such ordinary care, the injury would not have occurred." In Buesching v. Gaslight Co., supra, it was said: "The presumption of due care always obtains in favor of plaintiff in an action to recover damages for an injury sustained by him through the alleged negligence of another."

The rules of law announced in the cases above cited were fully reviewed by this court as well as the St. Louis Court of Appeals in the recent cases of Riska v. Railroad, 180 Mo. 168, and Deitring v. Railroad, 109 Mo. App. 524, and unqualifiedly approved.

This brings us to the consideration of the remaining proposition involved in the first contention based upon the action of the court in overruling the demurrer to the evidence at the close of the entire case. The position of counsel for defendant cannot be maintained upon this proposition unless all the facts developed in the trial of this cause, upon a fair and reasonable consideration of them, point irresistibly to but one conclusion; that is, that the plaintiff's deceased husband was guilty of contributory negligence in approaching and crossing the tracks of the defendant. If upon due and proper consideration of all the testimony introduced in this cause reasonable men might differ as to the inferences to be drawn from the facts disclosed by such testimony and such facts reasonably admit of different constructions and inferences, then we take it, under the well-settled rules of law repeatedly announced by this court, the question of contributory negligence must be left to the jury. The testimony as offered by the defendant falls far short of showing such a state of facts as would have authorized the trial court to sustain the demurrer

to the evidence interposed by the defendant. It may be said that in the testimony of the two witnesses upon whose testimony the defendant must chiefly rely in supporting their views upon this contention, Reuben Staten and the mortorman, Martin, may be found statements tending strongly to show that the deceased did not look or listen in approaching and crossing the tracks of the defendant, and that upon getting on the track he was instantly struck by the car being operated by the defendant's motorman, yet when we analyze their entire testimony it signally fails to show, with such conclusiveness as the law requires, as would warrant the favorable action of the court upon the request by the defendant, that the deceased was guilty of contributory negligence. It is true that witness Staten says that the deceased walked directly across the track and was looking directly in front—neither looking to the north nor the south; this statement, however, is followed by an additional statement which clearly indicates that he did see the car and was trying to avoid it. Upon cross-examination this witness says, "It seemed as though he aimed to get by before the other car came." We are unable to understand how the deceased could aim to cross over the track before the other car came unless he saw or knew the car was coming. This witness's testimony should certainly not be construed as showing conclusively that the deceased did not look or listen and did not see the approach of that car that struck him. We find in his testimony the further statement as to the appearance of the conditions presented to him. He says there was a mail car coming north and a passenger car going south, and it looked to him that Eckhard "thought he could cross." We are unable to see why a witness should conclude that Eckhard thought he could cross if he had no knowledge by looking or listening that a car was approaching. If he neither looked nor listened and was oblivious to the approach of any car,

we see no reason why he should entertain any thought about it, as to whether he could cross or not. The only way it could look to the witness that Eckhard thought he could cross was by the action and conduct of Eckhard and the conditions presenting themselves which would require Eckhard to give the question thought as to whether he could cross or not before the approaching car reached him. Martin, the motorman, first states that deceased stepped immediately in front of the car without looking. This statement is afterwards qualified in answer to this question: "Did he look in the direction of your car before he went upon the track?" "No, sir, he never looked towards my car that I could see." In other words, this witness's testimony simply amounts to this, that so far as he could see he did not observe the deceased looking towards the car, and this by no means conclusively establishes the fact that he did not look and listen for the approach of the car. These two witnesses in the course of their testimony use other very positive and emphatic phrases in respect to this accident, such as that, "He stepped upon the track and was instantly struck by the car;" however, it was the province of the jury to weigh the testimony of these witnesses and to consider it in connection with the undisputed physical facts.

There is one fact in connection with this accident about which all the witnesses agree; that is, that the deceased was near the east rail of the track when he was struck. The motorman, Mr. Martin, says he was on the easternmost rail of the track on which was the south-bound car when the car struck him, and that one more step and he would have been across. This being true, it must logically follow that when he first stepped over the westernmost rail the car must have necessarily been at least some distance from him and did not instantly strike him. All the testimony in this cause makes it manifest that he was not struck until he reached the

easternmost rail, and this fact emphasizes the correctness of the conclusions of the jury that, if they found that this car was running twenty or twenty-five miles an hour and did not strike the deceased until he was just in the act of stepping over the east rail, had this car been operated in accordance with the provisions of the ordinance, at a rate of speed not exceeding ten miles an hour, the deceased would have made that last step and his death would have been avoided. It was a proper and legitimate calculation for the jury to indulge in, that if the deceased had gotten, according to the testimony, two-thirds or three-fourths of the way across this track before this car struck him, running at the rate of twenty or twenty-five miles an hour, if the speed had been lessened one-half, the additional step mentioned by the motorman could have been made by the deceased and it would not have struck him at all.

Witness Staten says that "it looked to me that Eckhard thought he could cross the track, and it seems as though Eckhard aimed to get by before the other car came," and had this car been running at the speed limited by the ordinance, the thought that he could cross was well founded, and doubtless his crossing would have been in perfect safety. The deceased had the right, as said in the Riska case, to presume that the car was not moving at a greater rate of speed than that prescribed by ordinance, and acting upon this presumption, had the car been running at the speed he had the right to presume it was, there was reasonably sufficient time for him to cross the track in safety, it was not contributory negligence for him to attempt to do so.

However, it is insisted by appellant that the testimony of Staten and Martin tended so strongly to establish contributory negligence that there is no room for presumption, and it was error on the part of the court to so instruct the jury. We are unable to give our assent to this insistence. BURGESS, J., in the Weller

case, very clearly and forcibly stated the rule which is strikingly applicable to the evidence in this case. He said: "It is not sufficient that the evidence on behalf of the defendant tended to show that deceased was guilty of negligence contributing directly to his injury, but before this court can declare as a matter of law that deceased was guilty of such negligence, the evidence must be substantially all one way, and not such that reasonable minds might differ with respect thereto. This case, we think, belongs to the latter class, and was properly submitted to the jury."

After a full consideration of all the testimony in this cause and the legitimate inferences that the jury were authorized in drawing from the facts developed upon the trial, we are unwilling to say that the court should have sustained the demurrer to the evidence.

Complaint is made by appellant to the action of the court in modifying instruction numbered 4 requested by the defendant. We have carefully read the instruction as requested and number 4 as given, in which the modification is made. The complaint is chiefly directed to the terms employed in the closing part of the instruction, which limits the right of the motorman to assume and act upon the presumption that the plaintiff's husband would stop before going upon the track, until he became aware that the plaintiff's husband was going to get on the track in front of the car or *until his conduct and actions would have led a person of* ordinary prudence to conclude that he was going to do so. There was no error in the modification of this instruction. We are of the opinion that if the conduct and actions of a party approaching a railway track would lead a person of ordinary prudence, who might be operating a car upon said track, to conclude that such party was going upon the track, the right to act upon the presumption that the person would stop before going upon it, ceases.

A motorman has the right to act upon the presump-

tion that a person approaching a railway track upon which he is operating his car will stop before undertaking to cross the track, so long as there is nothing in the conduct and actions of the person so approaching as would indicate to a man of ordinary prudence that he was not going to stop, but was going to cross the track. Upon the observance of such conduct and actions on the part of a person approaching a railway track as would indicate that he intended to go upon the track, it is as clearly the duty of the motorman to pursue such course in respect to the operation of that car as he would if he was in fact aware that the person was going to get on the track.

This was not an improper or unjust limitation of the rights of the defendant in the operation of its business, but is simply the requirement of the performance of a plain duty to the public, which appropriately manifests the high regard the law entertains for the preservation of human life. It would be a humiliating confession upon our system of government if the law failed to require the strict observance of such duty under such circumstances in the operation of a business which is attended with so much danger to the traveling public.

There was no error in the denial of the request of the defendant for instruction numbered 3. It will suffice to say that the subject of that instruction was fully covered by the other instructions given to the jury. The attention of the jury had been called by other instructions to the duty of the agents and servants of defendant in charge of and operating the car in respect to the stopping of it upon the observance of plaintiff's deceased husband being in danger of injury, and the jury, under the instructions given, though not specially directed to do so, were authorized to consider all the testimony applicable to the subject, which included all the

conditions and circumstances at the time surrounding the act to be performed.

Instructions which undertake to make prominent certain parts of the testimony and directing the jury specially to consider certain facts in reaching their conclusions, as to the ultimate facts to be found, have not met with favor by this court. There was no error in the court refusing the request of defendant directing the jury to consider certain particular facts in reaching a conclusion upon an ultimate fact to be found by them. Our attention upon this question is directed by counsel to the case of Murray v. Railroad, 176 Mo. 183. That case is clearly distinguishable from the case at bar. The instructions requested and refused on that case required the jury to find a certain state of facts which were absolutely necessary to entitle plaintiff to recover. It was not a request directing the jury to consider certain facts in finding the ultimate facts necessary to be found; but it was a requirement of the jury to find the ultimate facts which were necessary to give the plaintiff any standing in court.

Finally, appellant complains that the court committed error in the admission of the ordinances in evidence. It is sufficient to say that in view of the recent, able and exhaustive review of this question by GANTT, J., speaking for the Court in Banc, in case of Sluder v. Railroad, 189 Mo. 107, the propositions involved in this complaint of error are no longer open questions in this State, and this contention must be ruled adversely to the defendant.

Ordinarily, willfulness in the infliction of injury in cases of this character, should not be attributed to those in charge of and operating the railway systems of this country. In this "dollars-and-cents" age, the demand made by the business public for rapid transit and the tendency to yield to such demands is readily understood; however, the pressing demands of a grasping

business world can furnish no justification for the violation of express provisions in state and municipal law safe-guarding the traveling public.

The ordinances introduced in evidence in this cause were enacted as a rule of conduct for those to whom their provisions are made applicable; they were enacted for a wise and noble purpose, to protect the citizens from injury; they were enacted by municipal authority to be observed, and not violated. The facts in this case emphasize the conclusion that had these ordinances been observed this accident would have been avoided.

The instructions given in this cause fairly and correctly presented the law covering every feature of this controversy to which the testimony was applicable, and finding no reversible error, the judgment of the trial court should be affirmed, and it is so ordered.

All concur.