## W. W. WILKERSON, Admr., Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, January 10, 1910.

1. NEGLIGENCE: Sufficiency of Proof: Question of Law. Negligence is an affirmative fact which must be established by proof before there can be any recovery on account of it. It is a question of law in the first instance for the court to determine whether the evidence in a given case tends to prove such negligence, and where the most favorable interpretation that the evidence will allow, fails to show negligence there can be no recovery.

2. ———: Test of Actionable Negligence. In determining what is actionable negligence the supreme test is, did the human agent, in charge of the instrumentality that caused the injury, act with the care that an ordinarily prudent man under the same circumstances would have exercised. If he did, there is no actionable negligence.

3. ———: Railroads: Running Over Brakeman. In a suit against a railroad company for negligently running over and killing a brakeman who had been sent to flag a train, the following rule should be applied: If the defendant or its servants before the accident, discovered, or by the exercise of ordinary care might have discovered plaintiff's perilous position and neglected to use means at their command to prevent the injury when the use of such means would have prevented the injury, the defendant is liable.

4. ———: ———: Evidence Failing to Show Negligence. In a suit against a railroad company for negligently running over

and killing a brakeman who was sent to flag a train, the evidence failed to show that those in charge of the train had any reasonable ground for anticipating the presence of any person on or so near the track as to be in a place of peril at the time of the accident or so long before the accident as to have enabled the engineer, by the use of the appliances at his command to have stopped the train before it struck deceased; and there was no evidence to show when the deceased went on the track or so near it as to imperil his safety, and no proof that the engineer could have stopped said train in time to have averted the accident. *Held,* that there was a failure to prove negligence and no liability would attach to defendant company.

5. ————: ————: **Injury to Flagman: Duty of Engineer.** Where the engineer in charge of a train had no reasonable grounds to apprehend that the flagman sent to flag his train would be so near the track as to imperil his safety, he was not required to discharge the same duty towards the flagman as would ordinarily have been required on approaching a public crossing or passing through any place where he should be expected to meet pedestrians crossing the track.

6. ————: ————: ————: ————: **Duty to Employees Working on Track.** The same rule would apply to a flagman sent to flag a train as applies to other employees working on or near the railroad track. Those in charge of a train have a right to presume in the first instance that the workmen will keep out of danger, and it is only when it appears that they will not do so that the persons in charge of the train are required to use proper means at their command to prevent injuring them.

7. ————: ————: **Killing Brakeman: Res Ipsa Loquitur: Burden of Proof.** In an action against a railroad company for negligently running over and killing a brakeman, the defendant is not called upon to explain the cause of the accident, nor purge itself of inferential negligence. The doctrine of *res ipsa loquitur* does not apply.

Appeal from Christian Circuit Court.—*Hon. John T. Moore,* Judge.

REVERSED.

*W. F. Evans* and *John H. Lucas* for appellant.

There was no evidence upon which to authorize the submission to the jury, and the court should have so declared. Guyer v. Railroad, 174 Mo. 330; Schmidt v.

Railroad, 191 Mo. 233; Walker v. Railroad, 193 Mo. 481; Sanguinette v. Railroad, 196 Mo. 495; Stolker v. Railroad, 204 Mo. 636; 3 Elliott on Railroads (2 Ed.), sec. 1315; Lamm v. Railroad, 216 Mo. 578; Mayer v. Railroad, 64 Mo. 267; Keown v. Railroad, 141 Mo. 86; Yarnall v. Railroad, 75 Mo. 575; Sexton v. Railroad, 98 Mo. App. 494; Evans v. Railroad, 178 Mo. 517; Daviess v. Railroad, 159 Mo. 1; Sharp v. Railroad, 161 Mo. 514; Helm v. Railroad, 185 Mo. 223; Clancy v. Transit Co., 192 Mo. 655; McGrath v. Transit Co., 197 Mo. 100; Cahill v. Railroad, 205 Mo. 393; Holland v. Railroad, 210 Mo. 350; Sissell v. Railroad, 214 Mo. 526.

*G. A. Watson* and *Hamlin & Seawell* for respondent.

The court did not err in overruling appellant's demurrer to the evidence. Kellny v. Railroad, 101 Mo. 67; Morgan v. Railroad, 159 Mo. 262; Klockenbrink v. Railroad, 172 Mo. 678; Jett v. Railroad, 178 Mo. 673; Fearsons v. Railroad, 180 Mo. 229; Scullin v. Railroad, 184 Mo. 707; Reyburn v. Railroad, 187 Mo. 565; Rapp v. Transit Co., 190 Mo. 161; Eppstein v. Railroad, 197 Mo. 720; McQuade v. Railroad, 200 Mo. 158; Ahnefeld v. Railroad, 212 Mo. 280; Waddell v. Railroad, 213 Mo. 16; Everett v. Railroad, 214 Mo. 54; Moore v. Transit Co., 95 Mo. App. 728; Meyers v. Transit Co., 99 Mo. App. 371; Degel v. Transit Co., 101 Mo. App. 56; Shanks v. Traction Co., 101 Mo. App. 702; Kolb v. Transit Co., 102 Mo. App. 143; Baxter v. Transit Co., 103 Mo. App. 597; Murrell v. Railroad, 105 Mo. App. 88; Payne v. Railroad, 105 Mo. App. 155; Dole v. Construction Co., 108 Mo. App. 97; Ross v. Railroad, 113 Mo. App. 600; Williams v. Railroad, 114 Mo. App. 1; Levelsmeier v. Railroad, 114 Mo. App. 418; Barrie v. Transit Co., 119 Mo. App. 38; Bectenwald v. Railroad, 121 Mo. App. 599; Merteus v. Transit Co., 122 Mo. App. 304; Smith v. Railroad, 129 Mo. App. 413; Fledermann v. Transit Co., 134 Mo. App. 199.

STATEMENT.—This was an action commenced in the Christian Circuit Court and tried before a jury. The material part of the petition, after alleging the death of Ezra Moore and the appointment of respondent as administrator, is as follows:

"That the deceased was a brakeman on one of the freight trains of appellant running from Springfield to Thayer, Mo., and that deceased was killed by the operation of another train of the appellant at or near Norwood, Missouri, on the 18th of August, 1907; that the deceased was ordered by the conductor of the train upon which he was working to walk east from Norwood on the tracks of appellant's road for the purpose of signaling and flagging trains approaching Norwood; that the deceased walked upon and along the appellant's tracks for a reasonable distance with signal lights and placed torpedoes on the track in different places, and afterwards walked back west on the tracks of appellant's road to a point where the track was level and straight from the east for over a quarter of a mile; that while displaying his signal light the deceased was run over and killed by a train of appellant, No. 706, which was approaching Norwood station from the east."

Specifying appellant's negligence, the petition continues:

"That the killing of plaintiff's intestate was the direct result of negligent, careless and reckless manner in which the train was run, managed and controlled by defendant's agents, servants and employees in this: That after defendant's employees in charge of and operating said train was or by the exercise of reasonable care and diligence, had they not been reckless in operating said train, could have seen the dangerous position in which the plaintiff's intestate, Ezra Moore, was situated and seeing or by the exercise of reasonable care and diligence, if said train had not been recklessly operated by defendant's agents, servants and employees in charge of said train, could have seen the imminent peril in which

plaintiff's intestate was placed; and that the deceased was unaware of the near and dangerous approach of said train, and that the agents, servants and employees in charge of said train negligently and carelessly failed to sound an ordinary whistle in time to avoid the injury herein complained of, and in fact, did not at any time before the injury to and death of plaintiff's intestate, either ring the bell, sound the whistle or give any other signal by which plaintiff's intestate might be warned of the near and dangerous approach of said train; and negligently failed and neglected to use the brakes or other appliances for stopping said trains, and negligently failed to use the appliances provided for and at hand of putting said train under control and stopping the same before it struck and killed plaintiff's intestate, but on the contrary therefor, recklessly and negligently ran its said train against the plaintiff's intestate without recognizing the torpedo signals which were run over and discharged before striking plaintiff's intestate, and without recognizing or applying the signal lights displayed by him and without keeping any lookout whatever, the same train being so made up that the tender was in front of said engine and caboose behind the same, and there being no light whatever on said tender, and said train being run at a high, dangerous and reckless rate of speed, by reason of all of which plaintiff's intestate was run over, etc."

The answer was a general denial.

The alleged cause of action is of that class denominated "death from wrongful act," and is brought under the provisions of section 2864 of the Revised Statutes of 1899, amended laws of 1905, page 136, which provides that whenever any person including an employee of a corporation is killed by the negligence of a co-employee or shall die from any injury occasioned from the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee while running, managing or conducting any locomotive or train of cars, etc., the cor-

poration employing such person shall pay a penalty in the sum of not less than two thousand dollars, and not to exceed ten thousand dollars, in the discretion of the jury.

The record discloses that the deceased was in the employ of the defendant company as a brakeman, running from Springfield to Thayer, and that he had been in the service only five weeks. On the afternoon of the 17th day of August, 1907, he, together with the other members of the train-crew, ran their train to Norwood, in Wright county, Missouri, where a collision occurred blocking the three tracks of the defendant's railroad at that place. The accident was reported to a dispatcher of the defendant company who ordered a train back from Cabool—about nineteen miles east of Norwood—to assist in clearing the tracks. This train was in charge of conductor A. M. Bibee, engineer J. A. M. Cadle and a fireman, and consisted of an engine, tender and caboose. The engine was reversed, running backward, with the tender in front, and was going at the rate of about twenty-two miles an hour. It was four or five o'clock in the morning and the weather was damp and foggy and it was dark. The deceased, as stated, was a brakeman on the wrecked train at Norwood of which J. W. Edwards was the conductor.

The only evidence as to negligence introduced in the case was that offered by the plaintiff, consisting of the testimony of J. W. Edwards, conductor of the wrecked train at Norwood, J. A. M. Cadle, engineer of the relief train from Cabool and A. M. Bibee, conductor of the relief train.

At the conclusion of plaintiff's testimony, the defendant offered a demurrer to the evidence which was by the court overruled, and defendant introduced no evidence whatever. Plaintiff obtained judgment for twenty-five hundred dollars, from which defendant has perfected its appeal.

The evidence discloses this state of facts: The train on which deceased was a brakeman was wrecked at Norwood, thereby blocking the three tracks at that place. For the purpose of clearing these tracks, a dispatcher of the defendant company ordered the return of a freight locomotive from the town of Cabool, a station nineteen miles southeast of Norwood on the same line of defendant's railroad. The conductor of the wrecked train at Norwood ordered the deceased, Ezra Moore, to go out and flag this extra train that was coming on from Cabool to remove the wreck. This order was given between four and five o'clock in the morning before daylight. The deceased took with him a red and a white lantern and went east to flag the train and was not again seen by the crew until his dead body was returned to Norwood, after a lapse of one and one-half hours after the time that he went east with his lanterns. The relief train arrived at Norwood at about six o'clock. At the time the deceased was ordered to flag the relief train, his conductor stated to him that the engine would be backing towards Norwood and would have no lights because the tender would be in front. He was not seen to take any torpedoes with him. This was the statement of his conductor, J. W. Edwards.

Engineer Cadle, who was in charge of the engine of the relief train, stated that he received orders at Cabool to return to Norwood and that he left Cabool at about 4:47 a. m. That there was no headlight on the tender towards the west, but that there was an electric light in the cab to enable the fireman to discharge his duties. He stated that when he was within about three-fourths of a mile from Norwood, rounding a curve, he was running about twenty-two miles an hour, when the engine hit the torpedoes. He testified that he did not see the deceased at any time before he struck him or at the time he struck him. That the track was straight from where he rounded the curve for a mile towards Norwood and that he had given his signals about one-

fourth of a mile east of where the deceased was killed, which consisted of two long and two short whistles, that being the usual and ordinary signal on approaching a station, and that these signals could have been heard a distance of at least a mile. The whistles were given by him on approaching the curve and he ran the locomotive between one-fourth and one-eighth of a mile after sounding the whistles before striking the first torpedo. He stated that when he ran over the first torpedo, he immediately tried to stop the train, and when he struck the second torpedo, he at once put the brake in emergency and was trying to see a light. The two torpedoes were about thirty feet apart. He testified that when he was looking for a signal or a flagman, he heard a dull sound and saw an object roll down the bank that he thought might be a hog. That the morning was drizzly and foggy. That he was keeping a lookout, but that he did not see the deceased or stop his engine before striking him. That the distance from where he ran over the first torpedo to where he struck the deceased was from sixty to eighty feet. That the engine was running twenty-two miles an hour and that it would have required from two hundred to two hundred and fifty feet in which to have stopped. He further stated that just before he reached Norwood, he expected a flagman to be there and he was looking out for him and trying his best to find him—"straining every nerve for that purpose"—and saw nobody on the track. He stated that if deceased had been standing up on the track or by the side of the track, he could have seen deceased about forty feet from the front end of the locomotive, and beyond that point, he could have seen a person on or near the track two hundred feet from the front end of the tender; that the explosion of the torpedoes indicated to him that a flagman was in the neighborhood. After the object was struck, the engineer went on to Norwood at a speed of six or eight miles an hour. That upon his arrival at Norwood, he made an examination of the engine and

tender and found pieces of a man's clothing and blood on the tank trucks on the left side going towards Norwood. He then went to the place where he thought the deceased was struck and found lantern frames in the middle of the track near the left rail.

Witness Bibee, the conductor of the relief train testified for the plaintiff as to the distance in which a train ought to be stopped under the circumstances detailed in evidence if the train was running twenty-two miles an hour, and he fixed the distance at two hundred and ten feet. He stated that he heard the explosion of the torpedoes; that there were two of them and that they were on the curve.

NIXON, P. J. (after stating the facts).—As we have seen in the statement of this case, this action is for a liability created by section 2864 of the Revised Statutes of 1899, amended laws of 1905, page 136, and the liability of defendant is based upon the negligence of its servants in operating a locomotive, and there can be no liability under well-established principles unless the plaintiff has shown the negligence of the defendant's servants. That is the very ground of recovery fixed by the statute under which this suit is prosecuted. Negligence is an affirmative fact to be established by proof before there can be any recovery on account of it, and it is a question of law whether the evidence in a given case tends to prove such negligence. Upon a consideration of the facts in this case—giving the plaintiff the most favorable interpretation that they will allow of or that can be reasonably put upon them as well as every fair inference from the facts—if negligence is not shown affirmatively from such facts, there can be no recovery by the plaintiff. [Ryan v. McCully, 123 Mo. 636, 27 S. W. 533; Keown v. St. Louis R. Co., 141 Mo. 86, 41 S. W. 926; Tarwater v. Hannibal & St. J. R. Co., 42 Mo. 163; Lovell v. Kansas City S. R. Co., 121 Mo. App. 466, 97 S. W. 193.]

It has been said that the definitions of negligence by courts and text-writers are more numerous than any other title within the scope of the law. But after we have gone over and examined all of such definitions, at last we must come to the supreme test—the test of common sense: Did the human agent in charge of the instrumentality that caused the injury act with the care that an ordinarily prudent man under the same circumstances would have exercised? If he did, there is no actionable negligence.

Stripped of all superfluous verbiage and simply stated, the charge of negligence in the petition means and can only mean that the engineer in charge of the relief train did see or by the exercisé of ordinary care could have seen the deceased on or near the railroad track in a place of peril in time to have given him signals or stopped the train and prevented the accident. The law of negligence in this State, as charged in the petition, has been often stated. Where a defendant or its servants before an accident discovered or by the exercise of ordinary care might have discovered plaintiff perilous position and neglected to use the means at their command to prevent the injury when the use of such means would have prevented the injury, the defendant is liable. [Kellny v. Missouri Pacific Ry. Co., 101 Mo. 67, 13 S. W. 806; Morgan v. Wabash Ry. Co., 159 Mo. 262, 60 S. W. 195.] As was said in the case of Scullin v. Wabash Ry. Co., 184 Mo. l. c. 707, 83 S. W. l. c. 764: "This is too well-settled law in this State to require any further discussion of it." And yet in this case we have tabulated by the industry of respondent's counsel some forty or fifty cases to establish this well-known doctrine.

In support of their contention that the demurrer of the appellant to the respondent's evidence was properly overruled by the trial court, we have been directed by learned counsel for respondent to numerous cases decided by the appellate courts of this State. An analysis of the cases cited makes it apparent that they

do not belong to a class like the present by reason of an entirely different state of facts developed. In this case, there is no testimony which furnishes any reasonable ground for expectation or anticipation by those in charge of the relief train of the presence of any person on or so near the track as to be in a place of peril at the time of the accident, or so long before the accident as to have enabled the engineer, by the use of the appliances at his command, to have stopped the train before it struck deceased. Hence the one question in this case did not arise in those cases cited and they have no application to the facts of this case. [Holwerson v. St. Louis & S. Ry. Co., 157 Mo. 216, 57 S. W. 770.]

As there are no tangible facts or circumstances to show where the deceased went on the track or so near it as to imperil his safety, there is no proof that the engineer could have stopped his train in time to have averted the accident, and there being a failure to prove negligence, no liability would attach to the defendant company. So that the one question which the plaintiff had to maintain to support his case was, When did the deceased go upon the track in front of the approaching train? Without this question being answered by tangible evidence, the judgment falls to the ground like a house of cards. The one necessary vital fact to be proven by the plaintiff was, When did the deceased go upon the track in front of the approaching train and place himself in a position of peril? This is not a question of presumption; it is a question of fact. To this question the most scrutinizing examination of the evidence fails to give any answer. It is as silent as the grave and as voiceless as the Egyptian sphinx. And no argument, speculation, citation of authorities, imagination or presumption, however ingeniously devised or protracted, will supply this missing keystone. Without it, the whole case of the plaintiff falls into shapeless ruins.

The court in this case gave but one instruction as

to negligence for the plaintiff to the effect that if the
jury should find from the evidence that the deceased
was on or near the track in such a position as to be in
imminent peril of being struck by the approaching train,
and that the defendant's employees in charge of the
engine were aware of his peril in time to have enabled
them by the exercise of ordinary care to have stopped
the train and averted the injury and they failed to exer-
cise such care, by reason of which the deceased was kill-
ed, the jury should find the issues for the plaintiff. This
was an entirely correct declaration of the law provided
there was any evidence to sustain it. .

Yet the court for the defendant gave this further
instruction: "The court instructs the jury that there
is no evidence in this case that the deceased was on or
near the track in a place of peril far enough away from
the engine that the engineer could thereafter have
stopped the train by the exercise of ordinary care on
the part of the engineer in time to have averted the
injury, and you cannot find for the plaintiff on that
ground." In other words, the court instructed the jury
on the one hand that if the deceased was on or near the
track in such a position of peril that he was seen or
could have been seen in time to have averted the ac-
cident, the jury should find for the plaintiff; but, for
the defendant, the court instructed the jury that there
was no evidence in the case that the deceased was on
the track of the defendant or near it in such a place
of danger that he could have been seen by the engineer
in charge of the train in time to have enabled him to
prevent the accident. In short, the court instructed
the jury that they should sustain a demurrer to plain-
tiff's evidence instead of taking that responsibility upon
himself and acting on the strength of his convictions.

The deceased knew that the train was approaching
from the east because he went out for the very purpose
of meeting it. He was sufficiently informed as to the
condition of the approaching train—how it was made

up—that the tender would be in front—and as to the lights on it. He needed no special training or long experience in order to be apprised of the danger of being on the track in front of the approaching train. As far as is shown by the testimony in this case, the duty that he was called upon to discharge in flagging the relief train did not require his presence upon the track in front of the approaching train or so near the track as to imperil his safety; that he was not required in any way, by instructions of the company or by any of its rules and regulations, or for very necessity or customary usage, to be upon the track or so near it as to imperil his safety in order to discharge the duty that he had undertaken.

Again, the engineer in charge of the relief train had no reasonable grounds to apprehend that the flagman in discharge of his duties would be in front of the engine or so near the track as to imperil his safety in flagging the train. Consequently, this engineer was not required to discharge the same duty towards the deceased that he would ordinarily have been required to discharge if he had been approaching a public crossing, or passing through any place where he should have expected to meet pedestrians crossing the track or in cases where he would expect workmen on the track. Nor had he any right to expect or apprehend, so far as the evidence goes in this case, that the deceased in flagging the train would expose his person in any way to be injured by this train. It is true, the evidence shows that after the explosion of the torpedoes under his train, he expected a flagman to be there and that he was looking for him and trying to see him; but there is no evidence from which we can deduce any fact or inference favorable to the plaintiff that the engineer was looking for the flagman with the expectation or apprehension that it would be necessary to give him signals or to slow down or stop the train or that the flagman would be in a place of peril on or near the track.

The same rule would apply to a flagman as to other employees working on or near the railroad track. In the case of Evans v. Wabash Ry. Co., 178 Mo. loc. cit. 517, 77 S. W. loc. cit. 518, BURGESS, J., speaking for the court said: "It will not do to apply this rule (the humanitarian doctrine) in all its strictness to section men whose business it is to work upon and keep in repair railroad tracks, for they are supposed to look after their own personal safety, and to know of the time at which trains pass, to look for them and see them, and to move out of the way. It is common knowledge that these men often voluntarily wait until trains get dangerously close to them, and then step out of danger and let them pass by, and to require trains to stop on all such occasions, when sectionmen are discovered on the track, would not only be imposing upon railroads unjust burdens, but would greatly interfere with traffic and travel. Those in charge of trains have the right to presume in the first place that such persons will keep out of danger, and not until they have good reason to believe that they will not do so, and then fail to use all proper means at their command to prevent injuring them, in consequence of which they are injured or are injured by reason of the willful negligence of those in charge of the train, should the defendant be held liable, and there was nothing of that kind in this case." See Davies v. People's Ry. Co., 159 Mo. 1, 59 S. W. 982; Clancy v. St. Louis T. Co., 192 Mo. 615, 91 S. W. 509.

The engineer, while less than half a mile from where deceased was struck, had sounded the usual signals given on approaching a station, which the evidence shows could have been heard a mile. When he rounded the curve and heard the first torpedo explode and first had reason to apprehend the presence of the flagman in the vicinity, he immediately tried to stop the train, and when he struck the second torpedo, he put the brake in emergency. He stated that it was a drizzly

and foggy night; that he was trying to see a light of a flagman and "straining every nerve to do so" and could see nothing; that soon after the train passed over the second torpedo, he heard a dull sound and saw an object roll down the bank which he thought might be a hog but which afterwards proved to be deceased. That the distance from where he struck the first torpedo to the place where he struck the second was a distance of sixty or eighty feet, and that at the time he struck the first torpedo he was running twenty-two miles an hour. The three witnesses for the plaintiff testified that with all the appliances at the command of the engineer, he could not have stopped the train in a less distance than two hundred and ten feet. If then, upon plaintiff's own showing, the engineer had no grounds to apprehend the presence of the flagman in the vicinity until he struck the first torpedo, and if at that time the deceased was at the place standing on the track where he was struck,—only eighty feet from the engine,—and the engine could not have been stopped in less than two hundred feet, there is absolutely no showing of negligence. So that if the engineer had been charged with the apprehension of the presence of the flagman in the neighborhood by the explosion of the first torpedo, and if at that time he had known that the deceased was on the track, he could not have averted the accident. We must therefore recur to the proposition already stated,—that unless the evidence shows that the engineer in charge of the relief train did see the deceased or could have seen him by the exercise of ordinary care in time to have prevented the accident, there is no liability. Again, without any evidence as to when deceased went upon the track or how long he had been upon it before he was struck, how can the conclusion be drawn from the evidence that the engineer saw him or could have seen him in time to have prevented the accident? This case is one where the most careful examination shows that all the facts connected with

the accident fail to point to the negligence of the defendant as the proximate cause of the injury, but reveals a state of facts from which an inference could as reasonably be drawn that the accident was due to a cause or causes other than the negligence of the defendant. In such a case, plaintiff cannot rely upon mere proof of surrounding facts and circumstances; nor is the defendant called upon to explain the cause of the accident or purge itself of inferential negligence. The doctrine of *res ipsa loquitur* does not apply in this case; and, unless we are to assume negligence from the fact of death by reason of injuries received from a locomotive in defendant's service, there can be no recovery in cases like this.

On the showing made by the plaintiff—and no evidence was introduced by the defendant—there was no such evidence of negligence as authorized a recovery in this case. Our conclusion is that the trial court should have given defendant's instructions in the nature of a demurrer to the evidence at the close of plaintiff's case. The judgment is therefore reversed. All concur.