NELLIE VAUGHN, Respondent, v. WILLIAM J. LEMP BREWING COMPANY, Appellant.

Springfield Court of Appeals, December 5, 1910.

1. **NEGLIGENCE:** Contributory Negligence: Personal Injuries: Struck by Team: Question for Jury. While defendant's servants were driving a spirited team on a crowded street, where the traffic was congested on account of a fire in an adjacent block, the plaintiff in attempting to cross the street was struck by this team, knocked down and injured. There was evidence showing that a vast crowd was in the street looking at the fire, and that traffic had been practically suspended, and that the team was being driven with loose reins, and the drivers were looking towards the fire and did not appear to be paying attention to the crowd. At the time plaintiff was struck she was crossing the street and was looking towards the fire, but she could have seen the approaching team had she looked. *Held*, that the question of defendant's negligence and plaintiff's contributory negligence was for the jury.

2. ——: Conflicting Grounds of Negligence: Instructions. Plaintiff was struck by a team of horses on a crowded street. The negligence alleged in the petition was a failure of the defendant's servants in charge of the horses to give warning, and the failure to stop the horses in time to have prevented the collision with plaintiff. *Held*, that these grounds of negligence are not inconsistent, and instructions given covering both grounds are not contradictory, both instructions being drawn on the hypothesis that plaintiff was exercising ordinary care for her own safety.

3. **HUMANITARIAN DOCTRINE:** Instructions: Negligence. The humanitarian doctrine may be stated to be a liability resting upon the defendant, although the plaintiff may have been guilty of contributory negligence. This doctrine applies only where there is negligence of defendant subsequent to the negligence of the plaintiff, so that the negligence of the defendant is clearly the proximate cause of the injury, notwithstanding

plaintiff's prior negligence; but the last chance doctrine is not in this case where the instructions required the jury to find that plaintiff was in the exercise of ordinary care at the time of the injury.

Appeal from St. Louis Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Chas. F. Krone* for appellant.

(1) The trial court erred in refusing to give a peremptory instruction to find for defendant on plaintiff's evidence. Her own evidence showed that her own negligence caused the injury. Sindlinger v. Kansas City, 126 Mo. 315; Wiggins v. St. Louis, 135 Mo. 558; Cohn v. Kansas City, 108 Mo. 387; Wheat v. St. Louis, 79 Mo. 579; Warner v. Railroad, 178 Mo. 125; Slepp v. Railroad, 85 Mo. 229. (2) The trial court erred in refusing to give a similar instruction on the conclusion of the whole evidence. McGrath v. Transit Co., 197 Mo. 97; Davis v. Railroad, 159 Mo. 1; Evans v. Railroad, 178 Mo. 1; Chaney v. Railroad, 192 Mo. 615; Shanks v. Springfield, 101 Mo. App. 702.

*E. M. Grossman* for respondent.

(1) Due care is a care according to time and circumstances. It adjusts itself automatically to the circumstances of the case. The gauge of duty and due care rises precisely as the degree of danger rises. Riggs v. Railway, 216 Mo. 304; Engelman v. Railroad, 133 Mo. App. 514; Doss v. Railroad, 135 Mo. App. 643; Zander v. Transit Co., 206 Mo. 445; Bresching v. Gas Light Co., 73 Mo. App. 220; Percell v. Railway, 126 Mo. App. 43. (2) As a general rule, one is not required to look for danger when one has no cause to

expect it, or when it does. not exist unless caused by the negligence of another. Crawford v. Stock Yards Co., 215 Mo. 394. (3) Unless the situation assumed by the plaintiff is one which threatens peril, apart from the subsequent intervening negligent act of the defendant, which produces the injury, plaintiff ought not, as a matter of law, to be declared negligent, and his right of recovery precluded for his own fault. Doss v. Railroad, 135 Mo. App. 643.

NIXON, P. J.—This was an action commenced in the circuit court of the city of St. Louis upon the following petition: (Caption omitted.)

"Now comes the plaintiff in the above entitled cause, and for cause of action states that the defendant herein is a corporation, duly organized and existing under and by virtue of the laws of the State of Missouri, and doing business in the city of St. Louis, and throughout the time mentioned herein was the owner of the horses and wagon referred to herein, and was in charge of them by its agents, employees and servants; that at or about noon on Saturday, the 31st day of October, 1908, while plaintiff was in the act of crossing Washington avenue, at the intersection of Sixth street, both being open public streets in the city of St. Louis, defendant, by its agent, employees and servants in charge of its horses and wagon, and while driving them in a westwardly direction at said place, so negligently, carelessly and unskillfully managed the same as to cause or suffer the same to be run against and strike plaintiff, knocking her down upon the street and running over her, injuring her in the manner hereinafter more particularly set forth. Plaintiff further states that at the aforementioned time, said streets, and more especially at their intersection, were extraordinarily congested with people, and that the highways, as well as the sidewalks, were crowded with people; that within a block and a half of the

aforesaid intersection, a building was afire, and that the city fire department was operating thereon; that the servants of the defendant in charge of said horses and wagon had knowledge of these facts (and by the exercise of ordinary care could have traveled over another street and thereby avoid injuring plaintiff), but that said agents or servants negligently and carelessly drove defendant's team of horses and wagon through a dense mass of people, which act of negligence directly contributed to plaintiff's injuries herein alleged. (That by the exercise of ordinary care defendant's agents or servants, or either of them could have dismounted from said wagon and could have walked before defendant's horses and warned people in the highway of the approach of defendant's horses and wagon, but that all of said agents or servants negligently and carelessly sat upon said wagon and thus negligently and carelessly drove defendant's team of horses and wagon through a dense mass of people, which act of negligence contributed directly to plaintiff's injuries as herein alleged.) Plaintiff further states that the agents or servants of defendant in charge of said horses and wagon saw or by the exercise of ordinary care would have seen plaintiff in a position of danger, and could by the exercise of ordinary care, have stopped said horses and wagon, or could, by the exercise of ordinary care, have changed the course of said horses and wagon, and thus could have avoided injuring plaintiff; but that said agents or servants negligently and carelessly failed to use ordinary care to discover plaintiff in a position of danger, and after they saw her in such position, or by the exercise of ordinary care would have seen her, they negligently failed to stop or change the course of said horses and wagon, each of which acts of negli- gence directly contributed to plaintiff's injuries as herein alleged. That while approaching near the place where plaintiff was struck by said horses and wagon,

said agents or servants caused or suffered the same to run at a high and dangerous rate of speed; which act of negligence directly contributed to plaintiff's injuries as herein alleged. That defendant was fur-- ther negligent, through its agents and servants in charge of said horses and wagon, in failing to give plaintiff any warning or other signal whatever of the approach of said horses and wagon, which said negligence directly contributed to plaintiff's injuries as herein alleged.

"Plaintiff states that by reason of being run against, struck and knocked down upon the street and run over by the negligence of the defendant as aforesaid, she was injured, cut, crushed and bruised upon her left ankle, her left instep, right side of her neck and face under right eye; her left ankle was sprained and cut and her left instep was crushed, and her breast bone was broken; her nervous system was severely shocked, shattered and weakened, and the muscles, nerves and tissues of her breast and of her left leg were injured; that because of said injuries, plaintiff suffered great pain in mind and body, and that she suffered permanent injuries and defects on her body; that she suffered loss in earnings of her labor; that she has expended and will be obliged to expend large sums of money for medical attendance and medicines, and that her health and strength are permanently injured and impaired; all in the sum of four thousand five hundred dollars ($4,500), for which sum, together with costs, plaintiff prays judgment."

The defendant's amended answer is as follows: (Caption omitted.)

"Now comes defendant and on leave of court first had and obtained filed its amended answer and admits that it is a corporation and denies each and every other allegation in plaintiff's petition contained.

"And further answering defendant says that plaintiff's injuries were caused by her own negligence

in failing to exercise ordinary care in looking and listening while crossing a public highway; for approaching vehicles, and by carelessly walking in front of the vehicle driven by defendant's servants when said vehicle was so short a distance from plaintiff as to prevent defendant's servants in charge thereof from stopping the same, by the exercise of reasonable care, in time to avert a collision with her.

"Wherefore, defendant prays judgment and to go hence free of costs."

Upon trial, the plaintiff obtained judgment in the sum of five hundred dollars, from which the defendant has appealed.

The principal contention of the appellant is that the trial court erred in refusing to give a peremptory instruction at the conclusion of the evidence directing the jury to return a verdict for the defendant.

The accident occurred at noon, on Saturday, October 31, 1908, in the heart of the shopping district of the city of St. Louis, at the intersection of Sixth street and Washington avenue. The respondent was a shopgirl, eighteen years of age. She was going to her noon lunch when struck down and injured by a loaded wagon drawn by a team of horses belonging to the defendant brewing company.

The plaintiff's evidence tended to show that at the time of the accident there was an extraordinary congestion of people at the intersection of Sixth street and Washington avenue, not only on the sidewalks, but on the roadway as well. These people were looking toward the west, their attention being drawn to that quarter by a fire about a block and a half distant where members of the fire department of the city were carrying women out of a burning building. A vast throng of people crowded the street, both east and west of the crossing in question. Street car lines intersect at this crossing, but owing to the congestion of the streets, the cars were blockaded and no vehicles

were traveling along the streets at this place, except, as will be seen, one automobile. The plaintiff, with a companion, left Nugent's department store at the southeast corner of Fifth street and Washington avenue about twelve o'clock to go to the Grand Leader for their lunch. They proceeded west, on the south side of Washington avenue, until they reached the southwest corner of Sixth street and Washington avenue, and then turned north to cross Washington avenue on the west side of Sixth street. Before crossing, respondent looked over the street and saw no traffic by movement of vehicles on Washington avenue, but only saw an automobile in the crowd of people. Her companion was on her right side. In crossing, their progress was impeded by the throng of people in front of them, behind them and on both sides. About this time, a beer delivery wagon belonging to the defendant, drawn by two horses, with two men on the driver's seat, was working its way west through the crowd, and as respondent was some two or four feet from the north curbing of Washington avenue, she was struck in the chest by the tongue of the wagon and knocked down and received her injuries. At the time she was struck she was looking west toward the fire and walked in front of the approaching team, there being nothing to have prevented her seeing the team if she had been looking eastward as the crowd opened in front of the team to give it passageway. Respondent testified that she received serious injuries in her chest; that her chest bone was broken, left leg bruised, both ankles cut and bruised, her nervous system shattered, causing mental pain and anguish, and causing her to expend large sums of money for medical attention and medicines.

The wagon which caused the injuries was in charge of two of defendant's employees and was loaded with cases of beer bottles. One of the men held the lines, the other sitting beside him. The wagon was drawn

by a team of large draft horses, one of them being a high-spirited animal and at the time of the accident was prancing along the roadway and seemed excited by the condition of the street and its surroundings. They were not, however, traveling very fast, due to the crowded condition of the street, and the prancing of the horses. There was testimony that at the time of the accident, the defendant's servants in charge of the team and wagon were talking and looking at the fire to the west of them; that they did not seem to be giving any heed to the people passing around them and that the driver at the time was holding the lines slack in his hands. The evidence for the respondent further tended to show that no warning whatever was given by the drivers of the team before she was struck, to warn her of their approach, and that the team was not in any way checked up to prevent them from coming in collision with her person.

The appellant introduced only the two drivers as witnesses who testified that there was no crowd of people in the street at the time of the accident. One of them stated that he called to plaintiff and her companion when he saw plaintiff was about to be struck, but that the girls paid no attention to his warning; that if they had stopped when he called to them, the accident would not have happened; that he called when the girls were some six feet away, and put on the brakes; that at that time, plaintiff's companion who was on her right side and nearest the team, turned her face around and saw the team coming and jerked the plaintiff, causing her to turn around toward the east, and she was struck in the breast.

The settlement of the facts and proper inferences to be drawn from them in cases of negligence are questions to be resolved by the jury, and it was for them to determine the proper conclusions to be drawn in this case and to say whether the defendant's servants acted in a reasonably prudent way or as careful

men ought to have acted under a like state of affairs. Whether the injurious consequences were such as ought reasonably to have been foreseen by the servants of the defendant was peculiarly a question of fact for the determination of the jury. To relieve one from liability the precaution taken must be sufficient under ordinary circumstances to prevent accidents and injuries. [29 Cyc. 471.] Negligence is a breach of duty to exercise reasonable care under the circumstances, and it is for the jury to consider all the circumstances and surrounding conditions and say whether the defendant's act or omission was or was not violative of this obligation, and to say whether the conduct of the parties was such as would be expected of reasonable and prudent men under a similar state of affairs. [21 Am. and Eng. Ency. Law, 501.]

Our own Supreme Court, following the general principles so clearly marked out by the text-writers, has often declared that where the facts are disputed, or the credibility of witnesses is drawn in question, or a material fact is left in doubt, or there are inferences to be drawn from the facts proven, the questions of negligence and contributory negligence should be submitted to the jury. [Eckhard v. St. Louis T. Co., 190 Mo. 593, 89 S. W. 602; McKenzie v. United Rys. Co., 216 Mo. l. c. 22, 115 S. W. 13.] In the case of Westervelt v. St. Louis T. Co., 222 Mo. l. c. 334, 121 S. W. 114, this language is used: "But we will not meddle with that conflict of testimony. The genius of our law has wisely and quite relieved an appellate court from that burden, at least. We neither hunger nor thirst after, nor assume, power to disturb the finding of twelve men in the box sanctioned by one on the bench on a question of fact on which the testimony ran pro and con. Theirs (not ours) the duty to sift and winnow out the true from the false, to believe or disbelieve."

Under the facts developed in this case, the defendant selected its own servants and put them in control of its team and wagon. Under the law defining defendant's social duty, it was responsible for the acts of its servants in the line of their employment. Those in charge of the team and wagon, trying to force their way through a throng of people under circumstances disclosed in this record, should have known the dangers that attended their action. They were required to conduct themselves in such a manner as not to injure others by their negligence. The amount of care they were required to exercise should be measured by the dangers and perils incident to the undertaking in which they were engaged. It must have been evident to those in charge of the team and wagon that they were engaged in a very hazardous undertaking when their surroundings are taken into consideration and especially when the congestion at the place of the accident is considered. It must also have been apparent to defendant's agents that the vast crowds in the street were looking toward the west where the fire department was trying to manage a fire, and that all traffic had been suspended by reason of the masses of people in the street. To attempt to force a high-spirited team, hitched to a loaded beer delivery wagon, with loose reins, through a crowded street, without the utmost caution, was a hazardous undertaking. Under these circumstances, we think the facts were sufficient to withstand a demurrer to the evidence. The learned trial judge properly submitted the question of negligence to the determination of the jury, and, as they have found against the defendant, the appellate court is powerless to interfere.

It is further contended by the appellant that the following instructions given for the respondent—the plaintiff having made an election and eliminated the last chance doctrine from the case—were erroneous because they were contradictory:

"1. The court instructs the jury that if you believe and find from the evidence that on the 31st day of October, 1908, defendant, the Wm. J. Lemp Brewing Company, was, through its agents, servants or employees in charge of the wagon and team of horses mentioned in the evidence in this case and was driving them at or about noon of said day at the corner of Sixth street and Washington avenue in the city of St. Louis, Missouri, and that said Sixth street and Washington avenue were intersecting open public streets within the city of St. Louis, and that at or about noon of said day the plaintiff was crossing the said Washington avenue at its intersection with Sixth street, and that while so walking across said street was struck by said horses and wagon and that as direct result thereof was injured, *and if you further find from the evidence that defendant's agents, servants or employees in charge of said horses and wagon could have given warning of the approach of said horses and wagon and that defendant's agents, servants or employees failed to give warning in any way, and if you further find that such failure of defendant's agents, servants or employees to give any warning was negligence under the circumstances and that such negligence directly caused plaintiff's injuries, and if you further believe from the evidence that plaintiff in attempting to cross said street and while crossing it was exercising ordinary care to avoid injury to herself, then and in that case your verdict should be for the plaintiff.*"

"2. (Same as No. 1 as far as italics.) . . . *And if you further find from the evidence that defendant's agents, servants or employees in charge of said horses and wagon saw, or by the exercise of ordinary care, could have seen plaintiff in a position of danger of a collision with said horses and wagon in time to have brought said horses and wagon to a stop with the appliances at hand, and to have thus averted the collision and injury to plaintiff, but that defendant's agents,*

*servants or employees failed so to stop said horses
and wagon in time to. have averted the collision, and
that such failure was negligent and that such negli-
gence of said defendant's agents, servants or em-
ployees directly caused said collision and said injury
to plaintiff, and if you further believe from the evi-
dence that plaintiff in attempting to cross said street
and while crossing it was exercising ordinary care to
avoid injury to herself, then and in that case your ver-
dict should be for the plaintiff."*

The right of the trial court under the pleadings
and evidence in this case to require the plaintiff to
elect and thereby eliminate the last chance or humani-
tarian doctrine is not before us for review. The first
of the above instructions, as has been seen, charges,
in effect, that if defendant's servants in charge of de-
fendant's team and wagon negligently failed to exer-
cise ordinary care and give plaintiff warning of her
danger· under circumstances where failure to give
warning was negligence, the plaintiff could recover.
The second of the instructions informed the jury that
if the defendant's servants failed to exercise ordinary
care to stop the horses and wagon and avoid the dan-
ger of injuring plaintiff, after they could have seen
by the exercise of ordinary care that plaintiff was in
danger of collision with the team and wagon, such fail-
ure on their part would constitute negligence and
plaintiff could recover.

The failure of appellant's servants to give warn-
ing, and their failure to stop the horses in time to have
prevented the collision with plaintiff, are charged in the
petition as the acts of negligence of the appellant and
as the proximate cause of the plaintiff's injuries. These
alleged grounds of negligence are not naturally or nec-
essarily inconsistent, but are compatible with each
other, and nothing in the nature of things would have
prevented the use of both of the precautions mentioned
in preventing the accident.

It is also contended by the appellant that the plaintiff could not have been in a position of danger at the time she received her injuries without negligence on her part, and the last chance doctrine having been eliminated by plaintiff's election, she could not recover. The last chance or humanitarian doctrine is well settled law in this state, supported by numerous decisions, generally applied in railroad cases and often expounded. It may be stated to be a liability resting upon the defendant, although the plaintiff may have been guilty of negligence on his part contributing to the injury. In such case, if the defendant or its agents could have seen the plaintiff's danger in time to have averted the injury, although the plaintiff may have been guilty of negligence contributing to the accident, it becomes the bounden duty of the defendant to use reasonable precautions to avert the injury to the plaintiff. [Scullin v. Wabash R. Co., 184 Mo. 1. c. 707, 83 S. W. 760; Wilkerson v. St. L. & S. F. R Co., 138 Mo. App. 328, 124 S. W. 543.] This doctrine applies only where there is negligence of the defendant subsequent to the negligence of the plaintiff so that the negligence of the defendant is clearly the proximate cause of the injury notwithstanding plaintiff's prior negligence. In this case, the theory of the last chance doctrine was not submitted by the court in the instructions complained of; these instructions proceeded on the theory that defendant's servants had been guilty of the specific acts of negligence charged in the petition while the plaintiff was exercising due care and caution on her part; they are bottomed on the liability of the defendent, and not on the liability of the defendant notwithstanding contributory negligence of the plaintiff.

As the probative force of the evidence was a question for the consideration of the jury, we cannot declare as a matter of law that there is no evidence in this case authorizing a verdict for the plaintiff. Upon the whole record, we find no material error author-

izing an appellate court to interfere with the finding
of the jury. The judgment is accordingly affirmed. All
concur.